Parker, C. J.,
delivered the opinion of the Court. .The question in this case is, whether Jane Burges, the pauper, and her children, *197 have a derivative settlement in the town of Manchester, under her late husband, Amasa Burges.
Her proper settlement prior to her marriage was in Boston, she having been born of parents who were legally settled in that town. She acquired no new settlement by her first marriage, her husband being confessedly an alien. Had then Amasa B., her second husband, a settlement in Manchester ?
He could have none in his own right; for he was born in Nova Scotia, within the dominions of the king of Great Britain, and so. by the principles of the common law, was a subject of that king, and owed perpetual allegiance to him.
But it is said that his father was a citizen of the United States, and so was capable of gaining a settlement in Massachusetts; and that, having lived in Manchester, and paid taxes there long enough to gain a settlement under the statute of 1793, c. 34, he became settled in that town, and communicated his settlement to his son Amasa, who removed with him as one of his family from Nova Scotia, being then a minor.
We are then to inquire, whether David B., the father, was ever lawfully settled in Manchester. He was born in Connecticut before the year 1759; at which time a colonial or provincial government subsisted there, and all the inhabitants were subjects cr the king of Great Britain. The father of David in that year removed to Nova Scotia, * and carried his son, then about [ * 234 j two years old, with him as part of his family. David remained there until the year 1797, when he removed to Manchester ; so that, being born under allegiance to the king, he voluntarily continued that allegiance during the whole revolutionary war, and until long after the treaty of peace, which established the final separation between the two countries.
Under these circumstances' he cannot be said ever to have been a citizen of the state of Connecticut; for he appears never to have been within that jurisdiction, after the rights of sovereignty were assumed there. According to the cases of Kilhamvs. Ward Of Al., and Gardner vs. Same, his voluntary residence, at the time of the ratification of the treaty, within the territories of Great Britain, determined his allegiance.
The case of Ainslie vs. Martin has been cited, as establishing a different doctrine. But it does not appear to be applicable to the case before us. The question here is, whether David Burges was a citizen of the United States, by reason of his having been born within the territory of Connecticut. It has not been shown to us, that the law of Connecticut, in this respect, is similar to that laid down in the case cited; and it is the law of Connecticut which must *198 determine whether David Burg s was a citizen of that state, merely on account of his birth there.
But there may also be a distinction, arising from the different in tent and view, with which the citizenship was to be applied in the two cases. In the case of Ainslie vs. Martin, recovery of land was the object. The tenant undertook to prove that the demandant was an alien; and he was obliged to do this according to the strict principles of the common law. But in the cases of Gardner KiTham vs. Ward Al., the question related to the exercise of political rghts and power; and the principle adopted was, 1 hat the inhabitants of this country, born under the allegiance of the king of Great Britain, remained his subjects, if. they removed within his territo- [ * 235 ] ries, and continued * there voluntarily until after the treaty of peace was ratified, with intention' to remain there. The doctrine of these cases is suitable to be applied to the case before us; for it is the civil and political relations of the citizens, and their municipal connections, on which is founded their settle ment in any town.
Conformably to this principle, it is very clear that David Burges, if he ever was a citizen of Connecticut, ceased to be such on the ratification of the treaty, and could not therefore obtain a settle ment in Massachusetts, never having been a citizen thereof.
This view of the case makes it unnecessary to consider the effect of the statute of the United States, which was referred to in the argument. But it may be well to suggest the construction which that statute would probably have received, if it had been necessary to consider it. The fourth section provides that the children of all such persons, as now are or have been citizens of the United States, shall be citizens, whether born within the United States or not. Without doubt, the object of congress, in making this provision, was to naturalize the children of actual citizens, who might be born abroad ; wl ether their parents were living or not, at the time of passing the act. It cannot be a fair construction, to make it apply to the case of all who had been born within the territory of any particular state, and who had quitted that territory for another country long before any sovereignty existed. The term, citizens of the United States, must be understood to intend those who were citizens of a state, as such, after the union had commenced, and the several states had assumed their sovereignties. Before that period there was no citizen of the United States; and it may be reasonably doubted, whethei this section can refer to any citizenship, but such as existed accord ing to the laws of the states, at the time of the adoption of the con etilution of the United States.
*199 * By the construction contended for by the counsel for [ * 236 ] the defendants, we do not see but that all the children of all the refugees and conspirators, although remaining in Nova Scotia or elsewhere, must be citizens of the United. States; and consequently supported as paupers, if they should come to reside within (his state (6).

Defendants defaulted.

 [Ainslie vs. Martin, 9 Mass. 154. —Martin vs. Woods, 9 Mass. 377. —Cummington vs. Springfield., 2 Pick. 394. —Auchmuty vs. Mulcaster, 5 B. & Cr. 775. Bright’s Lessee vs. Rochester, 7 Wheat. 535. —Thomas vs. Acklam, 2 B. & Cr. 779. —Kilham vs. Ward, 2 Mass. 268. —Ed.]