## Darius Charles *et al. versus* The Monson and Brimfield Manufacturing Company.

The former owner of a mill is liable, under the statutes passed for the regulation of mills, for damage occasioned by flowing land while he was the owner of the mill, although at the time when the complaint was filed he had ceased to be the owner or occupant thereof.

In such case, the owner of the land may recover for the past damages only, although both past and future damages were claimed in the complaint.

Under the statute of the United States, passed April 14, 1802, providing that the children of persons who then were or had been citizens of the United States, should, though born out of the limits of the United States, be considered citizens, it was *held,* that the child of a father who was a citizen of the United States after the treaty of peace with Great Britain by which the independence of the United States was acknowledged and after the adoption of the constitution of the United States, was not an alien although born without the limits of the United States.

A person in possession of land under a deed, claiming title, may maintain a complaint against a mill-owner for flowing, although such title be defeasible.

The flowing of land by a mill-owner is not a disseisin of the owner of the land; and therefore if such flowed land is conveyed by the owner, the grantee may maintain a complaint against the mill-owner for damage done by such flowing.

THIS was a complaint by Darius Charles and Miranda Charles, against the respondents, under the several acts passed for the regulation of mills, to recover damages occasioned by the flowing of the meadows of the complainants, in Brimfield. Miranda Charles was an infant.

The complaint prayed that a jury might be empannelled to appraise the yearly damage done to the complainants by such flowing, and to estimate such sum of money in gross as

should be a reasonable compensation for all the damages done or to be done to the complainants by raising and keeping up the head of water, and for the right of keeping up the same at such height and for such part of the year as the jury should determine to be necessary.

The defendants pleaded ; 1. The general issue ; 2. That the complainants were not seised and possessed of the premises alleged to be flowed ; 3. That the respondents, on the day of the date of the complaint, were not, nor for a long time previous thereto had been, nor have since been, owners and occupants of the mill-dam, mills, &c. ; 4. That Miranda Charles, one of the complainants, was an alien, born in foreign parts out of the allegiance of this Commonwealth and of each and every of the United States, and within the allegiance of the King of Great Britain, to wit, in Montreal in Lower Canada.

Upon the two first pleas, issue was joined to the country. To the third plea, the complainants demurred. To the fourth plea there was a replication setting forth, that the title of Miranda Charles to the land alleged to have been flowed, was derived, by inheritance, from her father, John Charles, who, at a time subsequent to the Declaration of the Independence of the United States, and at a time subsequent to the execution and ratification of the treaty of peace between the United States and Great Britain in which the independence of the United States was acknowledged, to wit, on January 1, 1785, was, and for a long time afterwards continued to be, an inhabitant and citizen of the United States, and of this Commonwealth. To this replication there was a demurrer.

At the trial, before *Putnam* J., the complainants proved, that the premises flowed were formerly occupied by Abraham Charles, of Brimfield, who died seised thereof ; and that in 1805 the real estate of the deceased was divided among his heirs, Nathaniel, John and Darius Charles, the premises overflowed being assigned to John.

It appeared that about the year 1790, John removed to Montreal. Truman Charles testified, that in 1824 he was in Montreal and made inquiries for John ; that he was informed, that he was dead, having left a widow and several children ,

that he saw a woman, who, he understood, was born in Que-
bec, and who called herself his widow ; and that he also saw
Nathaniel, Lucy, Miranda and Maria Charles, who called
themselves his children ; and that they were then all un-
married.

The complainants then offered in evidence a deed executed
by Nathaniel Charles, of Montreal, for himself, and as attor-
ney to Lucy and her husband and Maria Charles, dated
July 27, 1829, conveying three undivided fourth parts of the
premises overflowed to Darius Charles, which deed was ac-
knowledged and recorded ; also a power of attorney to Na-
thaniel Charles, of Montreal, from Lucy and her husband,
dated August 7, 1828, there being no other evidence of the
execution of such power than the certificate of a notary
public, that it was subscribed and witnessed in his presence ;
and a power of attorney from Maria to the same Nathaniel
Charles, dated July 16, 1829, but with no other evidence of
its execution than an affidavit of the subscribing witnesses,
certified by N. F. Uniacke, who was called in the affidavit
a justice of the Court of King's Bench.

The respondents excepted to the admission of these instru-
ments in evidence.

It further appeared, that Darius Charles entered under his
deed and had been in possession of the land so far as the
flowing would permit, ever since ; and that some part of the
land was cultivated in dry seasons, but not at other times on
account of the flowing.

The respondents erected their works on the stream during
the last war, and their dam soon afterwards, but within twenty
years, and had from that time until their alienation thereof by
deed a few months before the filing of this complaint, con-
tinued to flow the land.

Judgment was to be rendered for the complainants, so far as
their right to claim damages was maintained by the foregoing
facts and legal evidence. But if no such right was proved
on their part, judgment was to be rendered for the respond-
ents.

*Sept 23d.*   *Wells, Alvord* and *J. Stebbins,* for the complainants, to the
point, that the process under *St.* 1795, *c.* 74, might be main-

tained notwithstanding the respondents were not, at the time of filing the complaint, the owners or occupants of the dam and other works, cited *Holmes* v. *Drew*, 7 Pick. 141 ; to the point, that the remedy of the land-owner at common law, for damages in such cases, was taken away by that statute, *Stowell* v. *Flagg*, 11 Mass. R. 364 ; *Commonwealth* v. *Ellis*, 11 Mass. R. 462 ; and as to the alienage of Miranda Charles, *Manchester* v. *Boston*, 16 Mass. R. 230 ; Act of Congress of April 14, 1802, § 4.

Charles<br>v.<br>Monson and<br>Brimfield<br>Manuf. Co.

*R. A. Chapman* and *Ashmun*, for the respondents. This process being created by the statutes, derives all its force from them. By *St.* 1797, *c.* 63, it is provided, that the process shall be served on the owner or occupant of the mill ; but no provision is made for a service upon one who was a former owner or occupant. They early damages are to be estimated up to the time of the verdict. *Commonwealth* v. *Ellis*, 11 Mass. R. 462. Are the respondents liable for damages accruing up to that time and after they have parted with the land ? Suppose the jury assess the gross damages, must the respondents pay them ? Suppose the respondents neglect to pay such damages, do the present occupants forfeit their right to flow the land under the statute, or shall they be held to pay the judgment rendered against the respondents, of which they had no notice ? The judgment binds the land in the hands of a subsequent owner. *Commonwealth* v. *Ellis*, 11 Mass. R. 462.

It is clear the process would lie against the present occupants for a time extending as far back as their entry into possession. *Holmes* v. *Drew*, 7 Pick. 141.

We think the complainants have a remedy at common law against the respondents. The reasons for providing the statute remedy, such as regulating the height of the dam, &c., are not applicable where the respondent has ceased to be the owner, and nothing remains to be done but to settle the damages.

The complainant, Darius, could not purchase a right interfering with that of the respondents. They took the land adversely and claiming right, and destroyed all the profits. The owners of the land could not tear down the dam or prevent the respondents from occupying it ; they could bring

Charles
*v.*
Monson and
Brimfield
Manuf. Co.

an action only ; and this right is not assignable.   Bac. Abr.
*Assignment.*

The act of Congress of April 14, 1802, intends that *both* of the parents of a child born out of the jurisdiction of the United States shall have been citizens of the United States, in order to confer citizenship on the child. This fact is not alleged in regard to the parents of Miranda Charles. 25 *Edw.* 3, *St.* 2.

*Sept. 26th.*     SHAW C. J. delivered the opinion of the Court. The questions in this case arise upon a complaint against the respondents, for damages occasioned by flowing the complainants' meadows, under the several acts for the regulation of mills. It is a proceeding founded on statute, and must be governed by the provisions of the statutes.

The most material question in the present case is, whether under the statutes for the regulation of mills, the owners of meadows injured by flowing, can maintain this process against those who have heretofore been the owners and occupiers of such mills, and kept up the dams and flowed lands, after they have ceased to be such owners and occupants.

The question is not without difficulty, as all the provisions of the statutes are formed with a view to settling the future annual or gross damages, as well as past damages ; and they imply that the respondents are owners and occupants of the mills and mill-dams, at the time of commencing the process. And it is no doubt true that the legislature had in view the case which would most commonly occur, that, namely, where the same person who erected the dam, would continue the owner to the time of the complaint. Still the question is, whether the statute is not broad enough in its terms, by a just exposition, to embrace both species of damage. The original act, *St.* 1795, *c.* 74, did not distinguish between past and future damage ; it provided in general terms for the recovering of damages ; but it was sufficiently distinguished by the subject matter. The past damages were actually sustained and were to be absolutely assessed and recovered by the process ; the future damages were to be estimated provisionally, and to be recovered afterwards if the dam should be kept up. There was no limitation of the time for which the

past damages should be recovered. But by *St.* 1825, *c.* 109, § 2, such a limitation was established, and it was provided that a complainant should not recover for more than two years previous to the commencement of his process.*

Since the decision in *Stowell* v. *Flagg*, 11 Mass. R. 364, t has been uniformly held, that for damages thus sustained, no action lies at common law. The statute having in terms made it lawful for the mill-owner, to erect his dam and keep up his head of water, it seems impossible to treat the act afterwards as a tort or an illegal and wrongful act, and thereupon to give the owner of the land an action adapted only to afford a remedy for wrongful acts. In the case of *Holmes* v. *Drew*, 7 Pick. 141, it was decided that a mill-owner is not liable for damage for flowing lands, before his title commenced. It is perfectly certain, therefore, that if the complainants have not this remedy, they are wholly without remedy ; and by frequent alienations of the mill property, which may be made without the knowledge of the land-owner, the latter would be wholly defeated of the right to damages, intended to be secured to him by the statutes.

But considering that the statutes have distinctly two objects in view, the recovery of damages already sustained, and an estimate of the damages, gross or annual, which may be incurred afterwards, and security for the payment of them, and that the complaint is formed with this double aspect, the Court are of opinion, that the statutes can be properly so construed, as to give the party a remedy for past damages only, where the respondents have been owners and occupiers of a dam, which has caused the complainants' lands to be flowed, although they have ceased to be such owners and occupiers at the time of the complaint. Those provisions only of the statutes will be applied, which are applicable to claims for damages already accrued.

It was objected, that although a party might have a remedy on such a claim, upon a complaint specially adapted to such a case, yet upon such a complaint as the present, in the usual form, praying for past and future damages, he could not re-

---

* Extended to three years by the Revised Stat. *c.* 116, § 17.

Charles
*v.*
Monson and
Brimfield
Manuf. Co.

cover for past damages only, and that the demurrer was well taken. But upon consideration, we think that this objection cannot be sustained. It seems to be the common case, where a party claims more than he can establish by proof ; nevertheless, he will recover as much as he can prove, being within his claim. A complainant may not know, when he commences his suit, whether the respondents will be responsible for both past and future damages ; there may have been alienations and changes of title and occupation. He therefore lays his claim for the whole. It is a question of evidence and not of pleading. The respondents have sufficient notice of the nature and extent of the claim ; for by claiming the whole, the complainant demands each part. The judgment will be adapted to the case proved ; the warrant to the sheriff, to summon a jury to assess the damages, will be shaped so as to meet the case thus proved and shown by the judgment, and the verdict will follow the warrant.

As to the plea of alienage, we think it is well answered by the replication. The statute of the United States passed April 14, 1802, provides that the children of persons, who then were, or had been, citizens of the United States, though born out of the limits of the United States, should be considered as citizens, with a proviso not affecting the present question. The replication brings Miranda Charles within this description, by showing that her father was a citizen of the Commonwealth after the treaty of peace, and after the adoption of the constitution. It does not distinctly appear, where her father died ; nor is it material. In the case of *Manchester* v. *Boston*, 16 Mass. R. 230, this statute came under the consideration of the Court. They say, " without doubt the object of Congress in making this provision was, to naturalize the children of actual citizens who might be born abroad, whether their parents were living or not, at the time of passing the act." The Court are therefore of opinion that the plea to the alienage of Miranda, one of the complainants, cannot be sustained.

In regard to the objections taken to the deed under which Darius Charles claims, the Court are of opinion, that the

exceptions are immaterial. It appears by the report, that
Darius took a deed of these three quarters, which was duly
recorded ; he entered under it and had seisin and possession,
claiming title. This is sufficient against the respondents,
who are strangers not claiming title, especially when it is
considered that a judgment in this suit is not conclusive
upon the title. It was rather hinted at, than argued, that
this deed could not take effect, because at the time, the
grantors were disseised, the respondents having flowed the
lands before the date of the deed. But the obvious answer
is, the act of flowing was a lawful act ; it was a rightful
claim to an easement in the owner's land ; it constituted
neither an adverse entry, nor possession, nor even claim ;
and could in no sense constitute a disseisin, or defeat or
affect the operation of the deed.

In regard to the title of Miranda, by proof of her being
one of the heirs of John Charles, the Court are of opinion,
that the proof as it stands, is deficient, though from the cir-
cumstances it is highly probable, that the fact can be easily
and fully proved. If this fact is not conceded, there must
be a new trial.