Parker, C. J.
This is an action of the case at common law, to recover damages by reason of the flowing of the plaintiff’s land, occasioned by the erection and continuance of a dam across a stream of water, running through the soil of the defendant; which dam was erected for the purpose of raising a head of water sufficient to carry mills owned and occupied by the defendant.
* There is no doubt that such an action lies at com- [ * 865 ] mon law for this consequential injury, upon the common maxim that every man is so to use his own property as not te *332 injure his neighbor; and if an injury does ensue from an otherwise legitimate use of his own property, he is to compensate his neighbor in damages.
The question presented to the Court by this motion is whether the common law remedy by action is not taken away by statute, and whether the only remedy now remaining to the owners of the soil for damage, done by means of a dam lawfully erected, is not by complaint to the Court of Common Pleas, pursuant to the provisions of that statute.
This question has arisen within a few years past in divers parts of the commonwealth, and although every judge may have had occasion to give his opinion incidentally in trials "at nisi jprius, it has never yet come before the whole Court in a shape requiring a definitive decision.
The act of the legislature, entitled “ An Act for the support and regulation of mills,” (1) seems to have been made with a view to favor the owners of mills, so far as to relieve them from the frequent suits with which they were threatened by the owners of the adjoining soil. The preamble of the act shows this to have been the design of the legislature; and the words of the first section of it go far to establish a right in the owners of mills to flow the adjoining lands, if necessary to the working of their mills; subject only to such damages as shall be ascertained by the particular process therein directed.
As the common law action is founded on a wrong done by the defendant, and the process itself presupposes a tort, when the legislature has authorized the act itself complained of, we cannot conceive that the action remains.
If it should be said that the legislature itself has not the constitutional authority to deprive a citizen of a remedy for a wrong actually done to him, the answer is obvious, that they have a right to substitute one process for another; as, for instance, [ * 366 ] they may declare that, for an assault and battery, * an action of the case shall be brought, instead of an action of trespass; or that the process shall be by complaint, and not by writ, (a)
*333 From the general purview of the statute, made expressly to relieve mill owners from the difficulties and disputes they were before subject to, there can be no doubt of the intention of the legislature to take away the common law action, which might be renewed for every new injury, and so burden the owner of a mill with continual lawsuits and expenses. But as the statute in question is not drawn with technical precision, and as there are several clauses and expressions in it much relied on by the plaintiff, to show that the common law remedy was designed to remain, it is necessary to examine the statute somewhat in detail, to see whether there is any provision in it which cannot be reconciled with the apparent general intent of the legislature.
In the latter part of the second section, it is provided that the verdict of the jury, returned and allowed, shall be a sufficient bar to any action to be brought for damages; from which it is inferred, by the counsel for the plaintiff, that, until there is a verdict upon the process established by the statute, the common law remedy is open. But this construction would lead to a manifest absurdity. The statute was made for the relief of mill owners from a multiplicity of suits; still, however, it is left, upon this construction, to the party complaining of injury, to apply or withhold this remedy, as he shall choose. For the mill owner cannot commence this statute process; and he must therefore answer continually to actions brought against him, because his litigious adversary does not choose to have the controversy settled by the method prescribed in the statute. The expression relied upon in this section of the statute could intend nothing more than that the verdict returned, &c., should be final *334 and conclusive between the parties, until the measures afterwards prescribed, to obtain an increase or decrease of the damages, should be resorted to by one of the parties.
[ * 367 ] * It is also said that the statute does not provide fof the assessment of any damages happening before the institution of the process, this remedy being altogether prospective. But we are satisfied that this is not the true construction of the act. The jury are to ascertain the yearly damages done to the complainant, and the process is given only to those who have actually suffered damage; so that the verdict is to be returned for the amount of damages already incurred; and the practice, in those counties where the remedy under the statute is in most frequent use, is conformable to this construction. I may say, also, that, in those counties, since the passing of this act, the common law action has gone entirely out of use, from a belief, as I apprehend, that it was superseded by the statute. But, further, in the third section of the statute, a new and independent provision is enacted, that the same verdict and judgment thereon shall be the measure of yearly damages for the future. Now, if the provision in the second section was merely prospective, it is not conceivable, however inartificially the statute may have been framed, that it would be immediately followed by another section, enacting over again the same thing in form and substance.
The fourth section of the statute may be recurred to, as removing all doubt as to the intention of the legislature to establish this process, as the only legal remedy for this species of injury.
It provides if the owners of mills shall refuse to give security to the complainant for the yearly daihages which may have been ascertained, he shall have no benefit of the act, but shall be liable to be sued for flowing the lands of the complainant, in the same manner as if the act had not passed. This section recognizes the act as intended for the benefit of the mill owner; and it surely could not be for his benefit, he having no means of enforcing it, if it were left optional with the other party, to proceed under the act, or at common law, as if the act had not passed.
Ths latter clause of the same section provides that, if the mill owner shall flow lands at that season of the year [ * 368 ] which * has been determined by the jury to be unsuitable, such flowing shall not be justified; more than intimating that the flowing of the lands at another season is justified, except under circumstances prohibited by the act. If justified or authorized by an act of the legislature, surely it cannot be a legal foundation for an action founded on tort.
It has been urged, by the counsel for the plaintiff, that this remedy
*335 is merely cumulative, leaving the common law remedy in full force. But so to consider it would be to defeat the manifest object of the legislature ; which was not to give a new and additional remedy to the party injured, but to establish a right in the party causing the injury, subject only to a mode of indemnification which was supposed to be more convenient than the one before existing; because the use of the property, in the manner which causes the injury, is supposed to be of public importance.
I cannot help thinking that this statute was incautiously copied from the ancient colonial and provincial acts, which were passed when the use of mills, from the scarcity of them, bore a much greater value, compared to the land used for the purposes of agriculture, than at present. But with this we have nothing to do. As the law is, so we must declare it. And we are all of opinion that judgment cannot be entered in the action now under consideration, for the cause shown in the motion in arrest, and that the entry be, that the plaintiff take nothing by his writ, (a)

 Stat. 1795, c. 74.

 It would seem, from the preamble to the provincial law upon this subject, (12 Anne, c. 8,) from which the statute of 1795, c. 74, appears to have been copied, that it was intended to be applied only to “ mills serviceable for the public good and benefit of the town or considerable neighborhood in or near to which they were erected,” such as grist-mills, and perhaps saw-mills. These mills, early in the settlement of this country, were of great public necessity and utility; and lands taken for the use of such mills, in raising a sufficient head of water to carry them, especially when the jury were to determine “ how far the flowing might be necessary,” (act 1799, c. 74, § 2,) “ and was justified by the public convenience,” (ibid, § 4,) might truly be *333 said to be “ taken for the public use.’’ In any other view of the case, the act last referred to would seem to be contrary to the spirit of our constitution; and to that general principle of law, which is acknowledged in all countries, that the sovereign authority can take private property, in cases of urgent necessity, for public uses, and for public uses only. —2 Kent’s Com. 275, 276.—Hein. Elem. Jur. Nat. and Gent. lib. 2, 368, 369, 170.— Vattel, b. 1, c. 20, § 244. — Bynk. Quest. Jur. Pub. b. 2, c. 35 — Burlam. Polit. Law, pt. 3, c. 5, § 4, 24, 27. — Puffend. b. 8, c. 5, § 7.— Grot. b. 2, c. 14, § 7; b. 1, c. 1, § 6, and notes. — Barbeyrac. Liv. b. 40.—1 Kings, c. 21, 22. — Sueton. ad Vit. Aug. c. 56. — 1 Bl. Com. 139. — Stevens vs. The Proprietors of the Middlesex Canal, 32 Mass. Rep. 468.— Cogswell vs. Essex Mill. Corp. 6 Pick. 94. — It is incorrect to say that the legislature have in this instance merely substituted one remedy for anothe.. The act was designed to authorize, in the cases provided for, the permanent flowing of lands not belonging to the owner of the mill; or, in other words, to provide for the obtaining by such owner of an easement in the soil of another, which nearly or quite deprives the proprietor of all the benefit of his lands. Such an invasion of private property can only be defended in a case of great public necessity and utility. And yet the legislature, as well as the courts of Taw in this state, seem to have been disposed rather to enlarge, than to curtail, the power of mill owners ; who have unwarrantably been allowed, in cases where no public necessity or utility called for it, to take private property for their own private uses. — Act 1797 3. 63. — 1799, c. 78. —1814, c. 173. —1824, c. 153. —1825, c. 109. —1829, c. 122. Wolcott W. M Co. & Al. vs. Upham, 5 Pick. 292.

 Commonwealth vs. Ellis, post, 465. — Johnson vs. Kitteredge, 17 Mass. Rep. 76. — Cook vs. Stearns, post, 553.