## James Walker *vs.* The Oxford Woollen Manufacturing Company.

If an owner of land, that is flowed by a mill dam, sells and conveys the land before he has proceeded against the mill owner for damages, he may afterwards maintain a complaint, on the Rev. Sts. c. 116, and have a jury to assess the damages caused by flowing the land whilst he owned it.

This was a complaint, founded on the Rev. Sts. c. 116, in which the complainant prayed that a jury might be summoned and empannelled to assess the damages which he had sustained, within three years next before the institution of said com-

plaint, by the flowing of his land (described) by means of the respondents' mill dam. The complaint was dated June 15th 1844, and was filed in the office of the clerk of the court of common pleas on the 26th of said June. The question, whether the complainant could maintain his complaint, was submitted to the court upon the following facts agreed :

In 1829, the respondents erected a dam across a stream of water, below the complainant's land described in his complaint, for the purpose of working a mill constructed by them, whereby his land was overflowed and injured ; and they have, ever since, to the time of the institution of said complaint, maintained said mill and dam, and continued to overflow and injure said land. On the 17th of June 1844, the complainant, by his deed of that date, duly executed, acknowledged and recorded, conveyed said land to Jasper Brown, who is now the owner thereof. In that deed there was no grant nor reservation of any claim against the respondents.

*F. H. Dewey,* for the complainant.

*Bacon,* for the respondents.

SHAW, C. J. The single question in the present case is whether, under the mill act a complainant, who was owner of the lands flowed at the time the damage was sustained, and who in other respects would be entitled to recover damage under this process, is barred from such recovery by the fact, that before the entry of his complaint, he has alienated the land, in respect to which the damage is claimed.

The court are of opinion, that this case is substantially settled by principles decided in former cases. By the case of *Stowell* v. *Flagg,* 11 Mass. 364, it was decided, that the remedy given by the mill acts, for overflowing land, wholly took away the remedy at common law. The principle, on which it was so decided, seems entirely conclusive. An action at common law must proceed on the ground that the erection and continuance of such a dam is a tort. The statute declares it to be the mill owner's right. If an action at common law would lie, it would be because the dam was a nuisance ; and after a second judgment the plaintiff would

Walker *v.* Oxford Woollen Manuf. Co.

be entitled to have a warrant, as of right, to prostrate it. **Rev. Sts.** *c.* 106, § 4. But the mill act (*St.* 1795, *c.* 74,) declared that the mill owner might *continue* it, to his own best advantage. It is obvious, therefore, that all remedy at common law was taken away by the mill acts, and this is now confirmed by the Rev. Sts. *c.* 116, § 30.

It seems to us a sound rule of construction, when the legislature recognize the right of a party damnified to a remedy, and, upon considerations of equity and public policy, take away an existing remedy, and substitute another, that every provision and word in their act shall be construed liberally, to advance the remedy and make it commensurate with that which is taken away. It must be presumed that the legislature so intended it.

At common law, an owner of land, who by erections thereon had caused damage to another owner, would be liable to an action on the case for damage thus caused, although he had alienated the land on which the erection was placed. So the owner, who had sustained damage, would have an action on the case to recover it, although he had alienated the land in respect to which the damage accrued. This then ought to be the measure of the extent of the remedy substituted, and this is the construction to be adopted, if it can be done without doing violence to the language of the statute.

In *Seymour* v. *Carter*, 2 Met. 520, it was held that the claim for damages, under the statute, was a claim for money only ; that it did not pass with the land ; was not parcel of, or incident to the realty, and might be waived or barred, without release. It seems to follow, as a necessary consequence, that the right to damages is a right to a sum of money due from the person who, as mill owner, caused the damage for the time being, to him who, as land owner, sustained the damage for the time being, to be tried, ascertained and recovered in this special statute form of complaint, instead of a suit at common law. And so far as the decisions have gone, they have proceeded upon this construction. In *Holmes* v. *Drew*, 7 Pick. 141, it was decided that the respondent was

VOL X.                 18

not answerable for damage done before she became owner of the mill and dam. Yet the statute provides that the complainant can recover damages for the next preceding three years. But that case puts this modification on the generality of the words, viz. provided the respondent, as such mill owner, has caused such damage. So in *Charles* v. *Monson & Brimfield Manuf. Co.* 17 Pick. 70, the correlative proposition was held, that an original complaint would lie against those who have ceased to be owners and occupants of a mill, for the damage which accrued whilst they were owners. This decision, which was upon the old statute, went on the ground that, by a reasonable construction, the terms "owner and occupant," as applied to the mill, must be intended those who were owners and occupied for the time being, and caused the damage.

The present case requires us to go a step further; but we think it is a step in the same direction. It is a case where the complainant has ceased to be the owner of the land flowed. If he cannot have this process, he is without remedy. The strong argument against it is the same which was advanced and strongly pressed in the cases cited, viz. that the statute manifestly contemplates the adjustment of future damages, gross or annual, or both, and therefore implies that the complainant continues to be the owner of the land, and the respondent of the mill; otherwise, they have no interest, and are not competent parties to contest the question of future damages. But we think this was considered and answered in the last case cited; (17 Pick. 70;) that the statute has two objects in view, namely, to give a remedy for damage already sustained, and to adjust and secure those which may afterwards accrue. The statute is made to embrace the largest possible claim that can be made by one party against another, which is, when the complainant has been owner of the land flowed three years, and continues to be so to the time of the judgment, and when the respondent has been owner or occupant of the mill three years, and continues to be so to the time of the judgment. In such case it is convenient, and the statute accordingly provides, that the whole controversy, for past as well as future damages.

gross and annual, the height to which the water may be raised, and during what part, of the year, shall be determined by one verdict and judgment.   But we do not think it follows, as a necessary or reasonable consequence, that when the legislature have given a remedy, where a claim consisting of several particulars exists, it cannot be applied where some, but not all, of the contemplated demands exist.   On the contrary, we think it may be so applied ; and where another remedy for an acknowledged grievance is taken away, and this substituted, it ought to be so applied as to afford a remedy for any substantive part of the grievance intended to be redressed by its provisions.   That part only of the statute, therefore, which applies to the complainant's case, will be applied to it, namely, that which provides for the damage which he has sustained.

It was suggested in the argument, that the leading object of the statute is, to provide for the adjustment of future damages, and that the assessment of damages accrued was incidental.   The statute is undoubtedly framed with a double aspect, and has both objects in view.   If either object is leading, it seems to be that of affording compensation to a person whose lands have been actually overflowed.   Rev. Sts. *c.* 116, §§ 4, 15, 16.   And if the matter goes to a jury, they "shall also ascertain and determine what sum, to be paid annually, would be a reasonable compensation for *damages that shall be thereafter occasioned* by the dam." § 19. It would seem, therefore, quite as consistent with these provisions, to say that the leading object is to give a compensation for damage sustained, and whilst the jury are doing that, to ascertain also the future damage.

In saying, above, that the claim for damages did not run with the land, nor affect the realty, the remark was intended to apply to an original claim for unliquidated damages, and not to a case after judgment, where, by matter of record, the rate of damages is settled, and the claim therefor has become a qualified lien on the mill estate.

The complainant is entitled to a jury to assess his damages, according to the prayer of his complaint.