## TIMOTHY HILL & wife *vs.* CALEB W. SAYLES.

A declaration alleged that the plaintiff was owner of land situate on a brook, and that the defendant dammed up and diverted the flow of the water, and caused the plaintiff's land to be overflowed and injured. *Held*, that the plaintiff might amend by filing a new count, and setting forth therein the proceedings on a former complaint, made by him against the defendant, under the mill act; the verdict of a sheriff's jury, restricting the defendant from keeping up his mill dam during certain months in the year; the acceptance of the verdict, and judgment thereon; and alleging that the defendant had kept up his dam and flowed the plaintiff's land during the other months of the year.

When the time during which a mill dam may be kept up is restricted, by the verdict of a sheriff's jury, to certain months in each year, and the mill owner keeps it up during the other months of the year, and thereby flows another's land, he is liable to the land owner, in an action at common law, for the damage done by such flowing.

After a sheriff's jury have, by their verdict, restricted a mill owner from keeping up his mill dam during certain months in the year, he is liable to the land owner, in an action at common law, for flowing the land, by that dam, during those months.

although he causes such flowing through a canal cut by him, by the side of the stream, after the verdict, instead of causing the water to flow back in the natural stream, as it flowed before the verdict.

TRESPASS UPON THE CASE. The plaintiffs' original declaration alleged that they were owners of a tract of land [described) in Wrentham, situate on a brook, and that the defendant, on the 1st of May 1845, and from that day to the 1st of November following, dammed up and obstructed the flow of water in the brook, and prevented the water from flowing off from said land, and caused the water to overflow said land, whereby the grass and cranberry vines of the plaintiffs, growing thereon, of great value, were injured and destroyed.

At the trial before *Hubbard*, J. it appeared that the flowing complained of by the plaintiffs was caused by a mill dam of the defendant; and the defendant's counsel objected to the right of the plaintiffs to maintain their action. The plaintiffs thereupon moved to amend their declaration by filing a new count. To this the defendant objected. But the judge permitted the amendment, and they filed a new count in substance as follows:

For that the plaintiffs, at a court of common pleas held at Dedham on the third Monday of September 1843, duly made and entered their complaint against the defendant, alleging that they, on the 2d of May 1840, and before and since, had been and still were seized and possessed of a tract of land (described) in Wrentham, situated on Stoney Brook, and that the defendant, on said 2d day of May, erected a dam across said brook, and has ever since maintained said dam, for the purpose of collecting and detaining the waters of said brook, to drive and carry mills upon and near said dam; and that the erection and continuance of said dam have caused the water of said brook to flow back upon said tract of land, whereby the plaintiffs had suffered great damage; that said dam had been raised to an unreasonable height, and ought not to be kept up and closed during the whole year, wherefore they prayed that a jury might be empanelled to

determine how much, if any, said dam should be lowered, and what part of the year, if any, the same should be left open, and the plaintiffs' said land left unflowed, and also to assess the sum which the defendant should pay for the damage then sustained by the plaintiffs, by reason of the said flowing, and also the sum which the defendant should pay annually to the plaintiffs, as a reasonable compensation for the yearly damages thereafter occasioned by said dam, so long as it should be used conformably to the verdict of the said jury; and also to assess a sum in gross, as a reasonable compensation to be paid to the plaintiffs, by the defendant, for all the damages thereafter occasioned by such use of said dam, and for the right of using and maintaining the same forever, in manner aforesaid : That, upon said complaint, it was ordered by said court that a jury should be summoned to hear and determine of said complaint, and to decide all such matters as should legally come before them, on such hearing : That at the December term of said court, in 1843, a jury, summoned and empanelled for the purposes aforesaid, returned the following verdict : " The jury find that said complainants are entitled to receive damages for the injury caused by the flowing complained of, and they assess the amount of damages sustained within three years next preceding the institution of said complaint, and down to the time of rendering this verdict, at the sum of thirty two dollars for said three years; and they further find, that said dam, of said Sayles, has been raised and kept up, to an unreasonable height, a certain portion of the year, to wit, from the 1st of May to the 1st of November ; and they further find, that said dam ought to be kept open and unclosed, from said 1st of May to said 1st of November, in each year hereafter; and they further find, that the sum of five dollars is to be paid annually by said Sayles to said complainants, and will be a just and reasonable compensation for the damage that shall be hereafter sustained and occasioned by the dam aforesaid, so long as it shall be used in conformity with the verdict; and they also further find, that the sum of sixty five dollars in gross will

be a reasonable compensation for all the damages to be here-
after occasioned by such use of said dam, and for the right of
maintaining and using the same forever, in manner afore-
said;" which verdict was accepted by said court. Yet the
defendant, well knowing the premises, at said Wrentham, on
the 1st day of May 1845, and from that day to the 1st day of
November 1845, raised, kept up and closed, the aforesaid
dam, and did not, during said time, keep said dam open and
unclosed, according to the terms of said verdict; by means
whereof the said Sayles has, during all the time between
said 1st day of May and said 1st day of November, caused
the water to flow back upon the aforesaid land, and has
thereby greatly obstructed the flow of water in a certain
stream running through said land of the plaintiffs, whereby
said land has been overflowed and injured, and the grass and
cranberry vines there growing thereon, of great value, have
been injured and destroyed.

The trial then proceeded, and the following report thereof
was made by the judge:

The plaintiffs offered in evidence a copy of the record of
the complaint, verdict, &c. set forth in their declaration,
which was objected to by the defendant, but was admitted
by the court.

It appeared in evidence, that upon the stream contiguous
to the plaintiffs' land, there was an ancient dam, through
which the water was accustomed to flow, and that between
the said dam and the defendant's factory dam, there was
another dam, with gates in it, which could be opened and
closed at pleasure; that the factory dam made the mill
pond; that, after the finding of the verdict set forth in the
plaintiffs' declaration, and before the 1st of May 1845, the
passage way in the dam first mentioned, through which
the water of the stream had been accustomed to flow, was
closed for the purpose of making a reservoir on the de-
fendant's land below said dam, and the water of the stream
was diverted from its natural channel, and carried round above
said upper dam, and through the defendant's said land, into

the more easterly part of the mill pond: That the gates of the said second dam, after the water of the stream had been obstructed from flowing through said first mentioned dam, as aforesaid, were kept closed, for the purpose of preventing the water of said reservoir from flowing into the mill pond; the mill pond thereafterwards being ordinarily supplied by the waters of the stream, which flowed through said new channel.

It was admitted that the factory dam had at all times been kept closed; which was necessary for the operation of the mills on the dam.

No evidence, except the record in the case, was introduced to show which of the aforesaid dams was referred to in said verdict.

Upon this evidence, the court instructed the jury, that if they were satisfied that there was a dam erected by the defendant across Stoney Brook, and that said dam had not been kept open and unclosed, from the 1st of May to the 1st of November, and that in consequence thereof the plaintiffs' land had been flowed, the plaintiffs were entitled to maintain this action. Whereupon a verdict was returned for the plaintiffs, subject to the opinion of the whole court. And it was agreed by the parties, that if, upon the whole evidence, as reported, the plaintiffs were not entitled to maintain their action, the verdict should be set aside, and the plaintiffs become nonsuit; and that if the amended count was not rightly permitted to be filed, it should be considered as no part of the case.

*J. P. Rogers*, for the defendant.

*Wilkinson*, for the plaintiffs.

SHAW, C. J. This is an action of trespass upon the case against the defendant, for raising or maintaining a dam, across a natural stream, for the purpose of raising a head of water for working a mill, and thereby setting water back on the plaintiffs' land.

It appears by the report, upon which the question arises, that the plaintiffs formerly filed and entered their complaint against the defendant, alleging the flowing of the same land,

and praying that the defendant's dam might be reduced, and that he should be restrained from keeping it up the whole year; and also praying for the assessment of past damages, and of future annual and gross damages. On this complaint the defendant was defaulted, a warrant was issued, and a jury was empanelled, who returned a verdict, fixing the plaintiffs' past and future damages, and prohibiting the defendant from keeping up his dam from May 1st to November 1st in each year; which verdict was accepted, and judgment thereon rendered.

The gravamen of the plaintiffs' complaint in the present action is, that the defendant, in violation of the condition of said judgment, restraining him from keeping up his dam, from 1st of May to 1st of November in each year, has so kept up his dam, by means of which their meadow has been flowed. The objection is, that an action at common law will not lie, and if the plaintiffs have any remedy, it is upon the mill act.

The defendant relies upon Rev. Sts. *c.* 116, § 30. "No action shall be sustained at common law, for the recovery of damages, for the erecting, maintaining or using any mill or mill dam, except as is provided in this chapter." This clause is to be construed in connexion with all the other provisions of the chapter. It has been truly said that all the statutes on this subject, being in *pari materia*, must be taken together, and so construed, if practicable, as to make a harmonious system. The clause in question prohibits any action at common law, *except* as is provided in the same chapter; and it may be that in terms no action is therein given, in a case like this. But that which arises by necessary implication from the statute is as effectually excepted, as if it had been so in terms. The clause in question was manifestly intended to give the sanction of a positive enactment to a principle long since adopted, in *Stowell* v. *Flagg*, 11 Mass. 364, that when a mill dam was rightly erected and maintained, conformably to the statute, no action at common law would lie. This was necessary to give to mill owners the security and quiet which the statutes designed to afford. But in the

same case, it is distinctly intimated, that if the terms of the statute are not complied with, as where the dam is kept up at a season of the year prohibited by the verdict and judgment, the mill owner shall have no benefit of the statute, but be liable, as if it had not been passed, to a suit at common law, for the disturbance. So in the case cited by the defendant's counsel, *Johnson* v. *Kittredge*, 17 Mass. 76. It was held, that the verdict and judgment, under a complaint for flowing, are conclusive, as to the height of the dam and the season of the year, and that the common law remedy is taken away only when the mill owner can justify himself under the statute. And the court intimated that another process under the mill act would be useless and nugatory. It is there intimated, that if the mill owner erects new mills, or places new machinery in his mills, he may raise his dam higher, liable to pay additional damages, under the mill acts. But this was put hypothetically, and not adjudged. It was not necessary to determine it, because that was a process under the mill act, and the objection was, that it should have been an action upon the case. It was not sustained, upon the averment that the defendant's dam had been raised higher. That averment was rejected as surplusage, and the complaint was sustained, under another clause of the statute, upon the averment that the damages formerly assessed were insufficient, and on a prayer for an increase. So where the mill had been abandoned, but the dam kept up, an action at common law was held to lie. *Baird* v. *Hunter*, 12 Pick. 556.

It seems very clear, that by the former law an action at common law would lie, when the erecting and maintaining of a mill dam were not conformable to the provisions and conditions of the statute, and warranted and justified by them. Indeed, this results from the plain principles of law, founded on the maxim, *sic utere tuo, ut alienum non lædas.* He who obstructs a natural watercourse, by an erection on his own land, the effect of which is to prevent the water, in its natural course, from running off his neighbor's land, to his damage, does him a wrong, for which an action lies. It is

the case most commonly put, to illustrate the rule of the common law respecting consequential damages. And we think this law is not changed by the revised statutes. The privileges secured to mill owners by this act are conditional. They are to have them, *c.* 116, § 1, upon the terms and conditions, and subject to the regulations, therein stated. By § 3, the height of the dam, and the time of year it may be kept up, may be restricted and regulated, by the verdict of a sheriff's jury. By § 18, the jury may decide how much, if any, the dam shall be lowered, and what part of the year, if any, it shall be left open. Gross damages may be assessed; and by § 21, if these damages are not paid within three months, the mill owner shall lose all benefit of the provisions, until payment, &c. What is the benefit the mill owner would lose? Clearly, the protection against actions at common law, afforded by the mill act, when pursued. Without it, the mill owner is liable, as a wrong-doer, to an action for the erection of the nuisance, with such damages as a jury may assess, and to a further action for every continuance; and upon a second suit, the land owner is entitled, as of right, to a warrant to abate the nuisance, by the prostration of the dam. Rev. Sts. *c.* 106, §§ 1, 2, 4. The implication therefore is inevitable, that if the mill owner does not comply with the provisions of the statute made for his benefit, he is left, as if no such provision had been made, liable to a suit at common law.

Again; it is provided, as above cited, § 18, that the jury shall decide how much the dam shall be lowered, and what part of the year it shall be kept open; and yet no mode exists, by which such a judgment can be enforced, except by a writ at common law, for the damage, not warranted or justified by the judgment, because not complied with. In case of past damages assessed, the court may award execution; but no process is given to enforce the other parts of the judgment.

It was argued for the defendant, that upon the authority of *Johnson* v. *Kittredge*, under the old law, the mill owner

might increase the height of his dam, if he erected a new mill, or put in new machinery ; in which case the remedy of the land owner would be by a new complaint for increased damages. If such were a true construction of the former law, it is questionable whether, under the revised statutes, the mill owner, after the height of his dam has been fixed by a jury, and the damages assessed, has a right to increase the height of his dam, on building a new mill, or putting in new machinery. A provision to this effect was proposed by the commissioners, in their report, *c.* 116, § 36 ; but it was stricken out by the report of the legislative committee. This committee substituted another provision, authorizing the mill owner to raise his dam, which they proposed as § 34, and as part of the present § 33 ; but this was stricken out by the legislature, in passing the revised statutes, and no corresponding provision was adopted.

We are not aware that it has ever been contended that the mill owner, by putting up a new mill or new machinery, could avoid the restriction of keeping his dam open a part of the year. Whether he can now increase the height of his dam, upon such an occasion, giving notice of his intent to do so, and upon payment of increased damages, it is not necessary to decide in the present case ; because there is no suggestion that the defendant has increased his machinery ; and the increased height of his dam is not the subject of complaint, but that of keeping up the dam, during the part of the year which the verdict and judgment required it to be kept open.

Again ; by the rule of the common law, the land owner has a right to have the natural watercourse kept open the whole time. By the statute, and the proceedings under it, the mill owner has acquired a right to keep his dam up a certain part of the time, paying a certain amount of damage. For the residue of the year, the land owner remains in the enjoyment of his common law right, and is entitled to his common law remedy for the infringement of it.

We would not be understood to say, that all the duties, to be done by the mill owner, are conditions, and that upon

failure to perform any one of them, the land owner is remitted, in all respects, to his common law right. For instance, if he fails to pay the annual damage assessed; because the statute gives a remedy, by a personal action, for the amount, secured by a lien on the mill estate. But when a right is given, and no remedy prescribed, the party shall have a remedy at common law, by an action adapted to his case. When a sum of money is awarded to one, pursuant to statute, and no remedy is given, debt lies. *Bigelow* v. *Cambridge Turnpike*, 7 Mass. 202. So where damage was done by flowing, not warranted by the statute, case or trespass was held to be the proper remedy, according to the circumstances. *Fiske* v. *Framingham Manufacturing Company*, 12 Pick. 68. If, therefore, by force of the common law, modified, and to some extent controlled, by the mill act, and by the proceedings and judgment under it, set forth in the present case, the plaintiffs had a right to have the defendant's dam kept open from May to November, and it was not so kept open, they suffered a damage, in nature of a nuisance; and no other remedy being prescribed by the statute, they had a remedy by the appropriate action of case; and this remedy, arising by necessary implication from the provisions of the Rev. Sts. *c.* 116, is within the exception of § 30, restricting the action at common law.

It was stated in the argument, that by *St.* 1795, *c.* 74, § 4, it was provided that if, after a judgment requiring a dam to be kept open part of the year, the right of the land owner was violated in that respect, he should have his action; and hence it was inferred, that as no such action is expressly given by the revised statutes, it was not intended to be given. One answer would be, that such an express provision is unnecessary, because it flows as a necessary result from other provisions. But the argument itself is founded on misapprehension and mistake. *St.* 1795, *c.* 74, § 4, provided that when the mill owner should fail to give security for damages as therein required, he should have no benefit of the act, but should be liable to be sued for a flowing, as if the act had not been passed. Perhaps this conclusion would have followed with

equal certainty, if it had not thus been stated in terms.   But the same section further provided that if the jury should specify what part of the year the lands should not be flowed, (which is the present case,) during such portion of the year the act should in no manner justify the owner or occupant of such mill so to flow the said lands.   Here the act does not proceed to say that the mill owner shall be liable to be sued ; but the inference is perhaps as strong as if so expressed.   And in this respect, the statute of 1795 is like the revised statutes, and the argument drawn from their supposed difference has no foundation.

These considerations, we think, fully answer the objection which was made to the amendment, by adding a new count. The first count simply set out the ownership of their land by the plaintiffs, the damming up and obstruction of the water by the defendant, and the flowing of the plaintiffs' land. This stated a good cause of action.   The defendant could not safely demur to it.   *Non constat* that the purpose of the dam was to work a mill.   Then suppose the defendant had pleaded in bar, that he erected a dam as a mill dam, and built a mill upon it, and used it for the mill.   This would be *prima facie* a good bar.   But suppose the plaintiffs had replied and set forth their complaint and all the proceedings under the mill act, and the judgment thereupon, and the violation of the plaintiffs' right, by keeping up the dam from May to November.   It appears to us, that the record would have presented the same case which is now presented by the second count, and that this second count is only a fuller and more exact statement of the same cause of action as that presented in the first, and was rightly admitted by way of amendment.

The proceedings on the plaintiffs' former complaint for flowing were offered and were objected to by the defendant, but they were between the same parties, and we can see no ground of objection to the admission of them.   Their effect was a distinct question.

The facts of the case are briefly reported, and perhaps we may not fully understand them.   But as we understand the

case, there was an ancient dam, below the plaintiffs' land, unused, and through which the water flowed freely at the time of the complaint ; that below that dam was another, which regulated the admission of water into the factory pond ; and that it was the factory dam which made the mill pond. It appeared, that after the verdict and judgment, the defendant set apart a portion of his own land, through which a section of the stream passed, to make a reservoir, and used the two first mentioned dams for that purpose, and made a side cut by these two dams, by which the water below the plaintiffs' land was diverted from the natural bed of the stream, and flowed directly into the factory pond. It was admitted that the factory dam had at all times been kept closed, which was necessary for the operation of the mills on the dam. The question arises upon the correctness of the instruction to the jury. That instruction was, that if the jury were satisfied that there was a dam erected by the defendant across Stoney Brook, and that said dam had not been kept open and unclosed from May 1st to November 1st, and that in consequence thereof, the plaintiffs' land had been flowed, the plaintiffs were entitled to maintain this action. This instruction appears to us to be correct. The mere alteration of the mode of conducting the water from the plaintiffs' land to the dam, can make no difference. The gravamen of the plaintiffs' complaint was the flowing of their land by the mill dam ; and through what intermediate channel the water flowed off, or was set back, is immaterial. The efficient cause of the setting back was the mill dam.

Nor can we give any effect to the statement that the keeping up the water from May to November was necessary to the operation of the mills on the dam. This was considered and settled conclusively, by the tribunal constituted to settle it, namely, the sheriff's jury, under the complaint. The plaintiffs were awarded no damages for the injury done to their grass or cranberries, or other products, during that half of the year. That part of the judgment was conclusive, and must be regarded as *res judicata.*

*Judgment on the verdict.*