Shaw, C. J.
This case presents a new question under the mill acts. The relative rights of land owners and mill owners are founded on the established rule of the common law, that every proprietor, through whose territory a current of water flows, in its course towards the sea, has an equal right to the use of it, for all reasonable and beneficial purposes, including the power of such stream for driving mills, subject to a like reasonable and beneficial use, by the proprietors above him and below him, on the same stream. Consequently, no one can deprive another of his equal right and beneficial use, by corrupting the stream, by wholly diverting it, or stopping it from *553 the proprietor below him, or raise it artificially, so as to cause it to flow back on the land of the proprietor above. This rule, in this commonwealth, is slightly modified by the mill acts, by the well known provision, that when a proprietor erects a dam on his own land, and the effect is, by the necessary operation of natural laws, that the water sets back upon some land of the proprietor above, a consequence which he may not propose as a distinct purpose, but cannot prevent, he shall not thereby be regarded as committing a tort, and obliged to prostrate his dam, but may keep up his dam, paying annual or gross damages, the equitable assessment of which is provided for by the acts. It is not a right to take and use the land of the proprietor above, against his will, but it is an authority to use his own land and water privilege to his own advantage and for the benefit of the community. It is a provision by law, for regulating the rights of proprietors, on one and the same stream, from its rise to its outlet, in a manner best calculated, on the whole, to promote and secure their common rights in it.
The question in this case, with slight modification, may be stated in the words of the learned counsel for the defendants. It is this; whether, by the true construction of the Rev. Sts. c. 116, a mill owner, having mills on one stream, who has not sufficient water from that stream, may erect a reservoir upon his own land across another natural stream, between which and the former there is no natural connection, except at their confluence below, (for convenience this second stream may be called a brook), and raise a head of water, and thereby flow the land of another person above, through which such natural stream (the brook) runs down to the reservoir dam, and then conduct the water from the reservón upon his own land, by an artificial channel, down to the pond on which his own mill stands, and not be liable to an action at common law; such artificial channel being kept much higher than the natural outlet of the brook, in order to turn it into the plaintiff’s pond, to add to his power derived from the other stream.
The second question, supposing he has a right to raise his reservoir on the brook, in order to collect, all the water *554 which the brook alone would afford, and turn it into his lower pond, derived from another source, namely, the main body of the Back river, after passing through the rolling-mill, is whether he may make use of the same artificial channel, kept at a height greatly above the natural bed of the stream, Back river, and carried across it by means of a trunk or aqueduct, to convey the surplus water coming from the rolling-mill to the lower pond, and so use the reservón made upon the brook, as a reservoir for the water from the rolling-mill, being a large portion of the volume of water naturally flowing down Back river, and earned to the rolling-mill by means of a dam across that river above the rolling-mill.
There is no doubt that a reservón dam is a mill dam within the meaning and provision of the mill acts. It is not necessary that the dam be immediately connected with or quite near the mill; it is sufficient, though at a considerable distance, that it be directly and obviously subservient to the purpose of carrying a mill. Wolcott Woollen Manuf. Co. v. Upham, 5 Pick. 292; Fiske v. Framingham Manuf. Co. 12 Pick. 68. And when the remedy under the mill acts can be had, it is exclusive, and a bar to an action at common law as for a nuisance. Stowell v. Flagg, 11 Mass. 364.
In the present case, on the first question, the court are inclined to the opinion, that the defendants were not justified by the mill acts, in placing a dam across the brook, and creating a reservoir thereby, so as to flow the plaintiff’s land, when the purpose was, not to carry any mill erected on that stream, but to increase in a small degree the quantity of water in the defendants’ lower pond, for the use of his mills, said pond being supplied from another source, namely, the water flowing from the dam above the rolling-mill, after oeing used in the rolling-mill, and thence passing down to the defendants’ lower pond. A reservoir dam must still be a mill dam, in order to be within the mill acts; and the main purpose and design of the acts was to supply some mill on the same stream. The mill power which could be supplied from the brook alone, would manifestly be very small. On one occasion, in the middle of February, the *555 water was raised from the brook, and after being kept up a week, it rose to the height of the reservoir dam, and carried a very small stream over it. But if the reservoir could be used to raise the water of that stream, for a mill on that stream, it might be neither necessary nor useful to keep it up a whole year, or to keep up a mill at all; and so the complainant might be wholly relieved, or held subject to a lesser servitude.
But we have not thought it necessary to examine this point with so much care, as we should if the decision depended on it, because the court are all of opinion, that the defendants were not justified by the mill acts, in using the reservoir raised by the dam, on the brook, to receive and hold water coming from the rolling-mill, for the use of the defendants’ lower pond, to supply the grist-mill, forge and nail factory. This seems to have been the principal use of it. It appears that, upon an experiment made about the middle of February, when it may naturally be presumed that the water was high, after the water of the brook had been stopped a week, and without any access of water from the trunk or artificial canal, the water rose at the reservoir so as to run a very little over the dam. But if the water of the brook was sufficient to keep it at that height a great part of the year, it would afford no justification for turning a column of water into it from another source. The grant of power made by the mill acts is, to raise the water of that stream, and being in derogation of common right, it is not to be extended by construction beyond the just and fair meaning of the terms. The reason and principle, on which the right is founded, limits it to that of raising the water of that stream. To this a passage in one of the cases cited by defendant seems to be precisely in point: “ But we think it would be an extension of the principle not warranted by the statute, if it were so construed as to authorize one person to make a canal or artificial stream in such a manner as to lead the. water into the lands of another; and in such case, therefore, the right of the party, whose lands are flowed, to recover damages by an action at common law, is not taken away or impaired.” Fiske v. Framingham Manufacturing Co. 12 Pick. 72.
*556 According to the agreement of the parties, the defendants are to be defaulted, and damages assessed for the plaintiff.