The opinion of tbe Court was delivered by
WhitNER, J.
Tbe report of tbe Circuit Judge very fully *245 presents tbe facts upon wbicb tbe judgment of this Court is asked. We are not entirely without embarrassment as to some questions of a purely tecbnical character presented by tbe form of proceeding as well as tbe stage at wbicb tbe adjudication of this Court is demanded touching tbe real controversy in this case.
Tbe Commissioners have made a special return in virtue of tbe order of tbe Court at a preceding term, and our first inquiry is whether this is in fact such a report as will warrant any further step toward an adjustment of this contest or whether tbe commission is yet unexecuted.
By tbe terms of tbe Act of Assembly, 1856, (12 Stat. 506,) authorizing tbe construction of tbe road in question, an assessment is directed “ in tbe same manner and subject to tbe same right of appeal as is provided in case of lands taken for tbe construction of railroads authorized • by law.” The parties on either side, as we are informed, submit to be governed by tbe provisions of Act of Assembly, 1828, section 10 (8 Stat. 859), as to mode. This Act, No. 2448, comprises one of our earliest railroad charters, and satisfactorily defines tbe manner of proceeding in such cases, and to this Act, therefore, we refer. By its terms, amongst other things, tbe Commissioners are charged to “ state particularly tbe nature and amount of each” item assessed by them. Tbe minute detail thus required is essential in view of tbe interest to be effected, tbe right of tbe parties and an intelligible adjustment of tbe matters involved.
Tbe Commissioners “ could not agree as to tbe general result of tbe compensation wbicb ought to be awarded to tbe respondent, J. E. Edings.” To a certain extent, however, they “ all agreed,” and tbe nature and amount of each item they have particularly stated, amounting in tbe aggregate to one thousand and ninety-nine dollars and fifty-three cents. Two of tbe Commissioners were of opinion .this ought to be tbe extent of tbe compensation, whilst tbe remaining three *246 Commissioners were of opinion a further allowance should be made for the loss of the income to his private wharf in consequence of the establishment of a public wharf immediately contiguous and on the same plantation, though as touching this interest, these three Commissioners could not agree amongst themselves as to amount. There is no dispute about the facts on which this question rests, and it becomes a question of law, therefore, whether this item should be excluded, and if excluded, whether this Court is furnished with a statement setting forth the entire compensation to which the respondent is entitled. If on the other hand the respondent is entitled by law to compensation for this alleged loss, the Court is not yet furnished with a report as to the proper valuation, and the matter must be recommitted to the same or other persons to obtain such valuation.
Before entering upon the consideration of this question, however, it is proper to say a word in reference to another point which arises — the right of appeal. The Act provides that in case either party to the proceeding shall appeal from the valuation to the next session of the Court granting the Commission, and give reasonable notice to the opposite party of such appeal, the Court, upon satisfactory proof that the appellant has been injured by the said valuation, shall order a new valuation to be made by a jury who shall be charged therewith in the same term, and their verdict shall be final and conclusive between the parties unless a new trial shall he granted.
We would in no way trench upon the province of the jury by a premature judgment; but it is manifest thatWe have here a proceeding very analogous to a special verdict, and the facts are conceded to be before us. There is no intimation of any dissatisfaction by either party as to the compensation allowed on the enumerated items which all the Commissioners agreed to estimate, neither is there any intimation of any matter omitted which according to- the Act should be em *247 braced in the return. To this complexion, then, the case must come at last, and if the Court should decline an opinion under the circumstances, on the main and only remaining question in dispute, when thereby the whole case may be disposed of, it might be censurable as lending itself to a bootless litigation. To all, except those to whom litigation is a luxury, it would seem appropriate in just such a case to avoid unnecessary delay and consequent accumulation of expense, and put an end to this strife so far as may be by a calm and dispassionate consideration of the only question open to controversy.
When the legislature authorizes the laying out of a highway, or the establishment of other works deemed by them to be of public necessity and convenience, or when in their opinion it is for the public benefit, and in the construction thereof, damages are supposed to result to the property of others, and a mode is provided by statute for the assessment and payment of the same, the party so authorized is not a wrong doer, and the remedy for the person injured is confined-to the mode provided by the statute, and none exists at common law. 1 Am. Railway cases, 163; 11 Mass. 364; 12 Mass. 446; 4 Wend. 667.
Such is the case and such the relation in which the parties stand before us, and the Act of Assembly, 1856, already referred to, constitutes the law of the case.
We do not understand that any objection is raised as to the province of the legislature thus to provide for the public exigencies. The enterprises of the last half century have rendered the doctrine very familiar and no longer questionable, even in a class of cases widely different from that now under consideration.
The road and landing here authorized are for the free use of all the people of the State, and when constructed, though at the expense of the demandants, is to be kept in repair by the inhabitants of the island, and under the direction of the *248 commissioners of the roads. It is not, therefore, to be a source of private emolument to be enjoyed by those who incur the charge of its, construction. It is open to all, though few may contribute. The Act contains the following proviso: “ Before entering upon certain lands” designated, “compensation is to be made for such road and landing” by the de-mandants “to the owner, or to the purchaser in case any of the land be sold in the mean time, for the value of the premises talcen for public use, as well as for the damages generally to the same, to be estimated in the same manner, and subject to the same right of appeal, as is provided in the case of lands taken for the construction of railroads authorized by law.” The value of the premises talcen has been satisfactorily estimated, and certain items have been also estimated in which the parties acquiesce, presumed to be included under the terms “ damages generally to the same.”
To render more intelligible the position of parties and the precise nature of the interest, it is proper to state that subsequent to the Act of Assembly, 1856, the respondent purchased the land in question, and shortly after his purchase entered into an agreement with the master of a steamboat trading'to Edisto Island, whereby for a term of years the respondent was to receive annually the sum of eight hundred and twenty dollars, with some service as a carrier, equal to an additional sum of one hundred dollars, for the use of this landing, with an understanding at the same time that the contract should be discharged on the completion of the road and wharf. It is proper to add to this statement the fact that the preceding proprietor had occasionally permitted a similar use of the landing, -for which a sum of money was paid. The site selected for the wharf is at least half a mile distant from the landing, so that there is not by actual contiguity any interference with the parcel of land or means of access. The effect of a wharf and road open for the public and without charge will be readily perceived, and it is the loss of income *249 for the future for wbicb respondent claims compensation, and which three of the Commissioners sought to measure, varying in their estimates from four thousand six hundred and sixty-one dollars and thirty-four cents, to eleven thousand seven hundred dollars, making a difference of more than six thousand dollars.
Does such an interest or expectation fall within the purview of the Act ? Is it a thing to be compensated for by the public before the usual privilege of access to a common highway may be had ? - Is it a thing into which the elements of a fair and just contract so enter as that reasonable estimates may be made, and a fair and just price be demanded and paid ?
The question of franchise does not arise, no exclusive privilege has been conferred, and before that would have been done the Supreme authority would have exacted a corresponding obligation. The analogy, as far as it holds, is rather against, the claimant, as he insists on shutting out a common use, until he is compensated for the exclusive privilege he sets up, though with the next breath, if he pleases, he may deny all participation or enjoyment by others in his private wharf, and at any charge. The contract into which the respondent has entered since his purchase and since the Act of the Legislature, should not be permitted to introduce a new element. The principle involved in the demand, if well founded, should justify its maintenance, although no such contract existed. The interest then to be protected would almost vanish into thin air. It might, then, be a right to levy contributions, but no customers might present themselves to be taxed. Thus it is seen that the thing itself, as a source of profit, or subject of compensation, would be of doubtful character. An innkeeper or merchant through whose land a railroad may pass might sustain great loss of custom by the diversion of trade and travel, but in estimating the value of the lands taken for the track and the damages *250 to tbe same, sucb a loss bas never yet been compensated, and the difficulties through which these roads have struggled into existence in certain quarters of the State without such amercements is a high evidence of the sense of the country on the subject. Scarcely a road has ever been established without such a consequence, and private interests suffer without any other indemnification than such as result in the general good.
If loss of custom is the proper subject of indemnity, so it. would be in every monopoly enjoyed by adventitious circumstances. Take the case that might arise, and has doubtless often. In the navigation of these highways by steamers the landed proprietors enjoy a great monopoly in the supply of fuel, but if a public road and landing should be established, competition would greatly curtail the profits, yet in a case of compensation for injury, such an item would not be tolerated. Competition is destructive of monopolies, and hence it should be encouraged, and although new facilities and improvements occasion great losses on old investments, the wants and necessities of the public should neither be fettered nor taxed to relieve such complaint. Such remedies to individuals would be utterly subversive of the public good, and, therefore, are unreasonable and unjust. The progress of society would be greatly retarded if not entirely restrained by such concessions.
Income from this landing would be as effectually cut off by the selection of a site upon the land of á neighbor as at the point designated, yet it is conceded in such case compensation could not be demanded with any hope of success. If loss of income constitutes a just subject of remuneration, the purpose of the legislature to protect the citizen would have been manifested by terms covering that case likewise.
But we are satisfied that the Act of the Legislature includes ño such interest, and compensation, for loss of income, from that source, cannot be legally demanded under its provisions. The value of the premises taken for public use, and the *251 damages to tbe same, do not imply a remuneration for injuries so remote, vague, and uncertain, and in no way incident to tbe thing taken, or of damage to tbe same. “Speculative opinions of prospective injuries” furnish very unreliable evidence on which to base an estimate, and that must be a strong necessity which drives a Court to the adoption of such expedients.
We have already seen that these demandants are not to be regarded in the character of wrong-doers, and though damages are spoken of and compensation provided for, it is not in the light of a wrong done, for which a punishment is to be inflicted, but sjmply in the light of a fair and reasonable contract in which a fair price is to be paid for private property taken for public use and in promotion of a public good.
This Court is of opinion that the loss of income from, the private wharf of respondent, J. E. Edings, in consequence of the establishment of a public wharf immediately contiguous, and on respondent’s plantation, does not constitute an item for compensation to be paid by the demandants under the Act of the Legislature in virtue of which they are authorized and empowered to build and construct a public road and wharf, and referred to in these proceedings.
This Court is of opinion that the demandants are'entitled substantially to their motion submitted on Circuit, and now renewed in this Court, except so far as the same asks for a confirmation of the return, the order contemplated by .the Act being rather that the same be filed to remain of record.
It is, therefore, ordered that the proceedings of the Commissioners, C. A. Trenholm, C. M. Eurman, Thomas E. Dray-ton, T. B, Lucas, and J. W. Cray, and accompanying plat,, which have been returned by them to the Court granting the commission, be filed in the office of the clerk of the said Court, there to remain of record, and that the sum of one thousand and ninety-nine dollars and fifty-three cents, which they have all agreed to be a just compensation *252 for tbe premises taken for public use and damages particularized in tbe items wbicb constitute that sum, be considered tbe valuation of tbe Commissioners under tbe order of tbe Court heretofore made, in exclusion of tbe other item on the subsequent part of tbe proceedings spoken of, and wbicb in tbe judgment of this Court is inadmissible in tbe estimate of damages contemplated by tbe Act of Assembly, 1856.
Tbe right of appeal from tbe valuation herein recognised is reserved according to tbe mode prescribed by tbe Act.
Wardlaw, Withers, Glover, and Muhro, JJ., concurred.

Motion granted.