Brigham *v.* Wheeler.

FRANCIS BRIGHAM *vs.* ELBRIDGE WHEELER.

If an existing mill is injured by the erection of a dam for a new mill upon the stream be-
low, the remedy is by an action of tort, and not by a complaint under the mill acts.

TORT to recover damages for injuring the plaintiff's mill by
the erection of a dam for a new mill upon the stream below.
At the trial in the superior court, before *Brigham*, J., a verdict
was taken for the plaintiff, under a ruling of the judge that this
was the proper form of remedy ; the parties agreeing that if this
ruling was right the damages should be fixed by an assessor;
and the defendant alleged exceptions.

*T. H. Sweetser & A. V. Lynde*, for the defendant.

*J. G. Abbott & J. T. Joslin*, for the plaintiff, were not called
upon.

COLT, J. The defendant contends that the only remedy which
the owner of a lawfully existing mill has against a riparian pro-
prietor upon the stream below, who by the erection of a new
dam and water mill causes back-water to flow upon his wheels,
is by complaint for flowing under the mill acts. Gen. Sts.
*c.* 149. This claim is founded upon an entire misconstruction
of the provisons of that chapter.

The right to maintain a dam which shall cause the water of
a natural stream to accumulate upon the land of proprietors
above is a right which did not exist at common law. In the
absence of statute provisions, every proprietor has the right to
have the water of a natural stream flow from his premises in its
accustomed channel, free and unobstructed ; for any obstruction
of such flow the party injured had his remedy by action, or by
abatement of the cause of the obstruction. Such right of ac-
tion and power to abate hindered and discouraged the erection
of mills to a great extent, since they could only be safely built

by those who were proprietors by good title of all the land which might be flowed by them. In early times, when mills were more immediately subservient to the convenience and necessities of the inhabitants in their immediate neighborhood, it was the policy of the legislature to promote and encourage their erection. To this end, the *St.* of 1795, *c.* 74, was enacted, which declares in the preamble that the erection of mills to accommodate the inhabitants of the several parts of the state ought not to be discouraged by many doubts and disputes. This statute, in its main features, but with some modifications and additions, has continued the law of the Commonwealth, and is incorporated in Gen. Sts. *c.* 149. It takes from the land owner his common law remedy for injury by flowing occasioned by the erection of mills, and substituted therefor the remedy by complaint for an assessment of damages by a jury; and, being in derogation of the common law, is to be strictly construed. Keeping the purpose of these statutes in view, it is easy to explain and reconcile all the provisions of Gen. Sts. *c.* 149. Section 1 provides that any person may erect and maintain a water mill and dam, upon the conditions and subject to the regulations of the chapter. Section 2 expressly enacts that " no *such* dam " — that is, no dam which is to be subject to the provisions of the chapter — shall be erected to the injury of any mill lawfully existing, either above or below it. Section 4 provides that a person whose land is overflowed or otherwise injured by any *such* dam — meaning, of course, any dam authorized by the chapter — may obtain compensation upon complaint in the manner provided. There follow many sections with full provisions for a hearing and assessment of damages, annual and gross.

The defendant relies on § 31, which provides that " no action shall be sustained at common law for the recovery of damages for the erecting, maintaining or using any mill or mill-dam, except as is provided in this chapter." This section is somewhat broad in its provisions ; but it is to be interpreted in reference to all the other provisions of the chapter, with due regard to its whole scope and purpose. And there can be no doubt that the dams

protected by it are only those which are by statute authorized to be erected and maintained. All other dams and obstructions stand as before, with the common law remedies originally existing for injuries produced by them.

The dam which the defendant has erected comes within this last class, expressly excepted by § 2 from the benefits and protection afforded. The construction contended for, instead of encouraging and increasing the number of mills, would have the direct effect to diminish them, by allowing the lower mill to absorb and destroy the upper, upon compensation to be made on complaint for damages. It would be impossible to sustain such a marked invasion of private right upon any theory upon which the mill acts have been heretofore sustained.

This question, though now for the first time presented in this precise form, has been virtually decided in this commonwealth. In *Thompson* v. *Moore*, 2 Allen, 350, the remedy for an injury caused by a dam and mill to an owner of land below was held to be by action of tort, and not by complaint under the statute. And yet the section upon which the defendant relies is quite as applicable to such a case. In *Hill* v. *Sayles*, 12 Met. 142, it was decided that where the time during which a mill-dam may be kept up is restricted by verdict of a sheriff's jury to certain months in the year, the mill owner is liable to an action at common law for flowing the plaintiff's land at other times. See also *Stowell* v. *Flagg*, 11 Mass. 364; *Murdock* v. *Stickney*, 8 Cush. 113; *Bigelow* v. *Newell*, 10 Pick. 356; *Cary* v. *Daniels*, 8 Met. 477; *Smith* v. *Agawam Canal Co.* 2 Allen, 355.

*Exceptions overruled.*