WILLIAM WIGHT & others *vs.* HENRY H. PACKER & others.

The proceedings on a complaint for flowing under Gen. Sts. *c.* 149, bind one subsequently acquiring the mill-owner's rights, though the damages to be paid are determined by an award rendered upon a submission entered into under a rule of court giving the referees the powers of a sheriff's jury; and, the complainant having elected to take the gross sum awarded, the subsequent purchaser's failure to pay such sum within the time limited by Gen. Sts. *c.* 149, § 22, forfeits his rights under the act, and makes the further maintenance of the dam a nuisance to be restrained by proceedings in equity; and a mortgagee of the mill, though out of possession, is a proper party defendant to such proceedings, and, making no disclaimer, will be enjoined.

DEVENS, J.   The defendants in the present action are Packer, who was owner of a water mill and dam, by which the plaintiffs' land is flowed, which dam was erected in 1869 ; Teele, to whom Packer's estate was, on December 1, 1872, conveyed by himself for the benefit of his wife and family; the Barnstable Savings Bank, to whom, on February 24, 1872, Packer mortgaged his estate to secure the payment of the sum of $7500, but who have never entered under their mortgage ; and the Barwick Wrench Company, to whom, on February 24, 1872, the defendant Packer made a lease of the premises under which this company entered and has since occupied.   Proceedings under the mill act having been commenced by the plaintiffs in the Superior Court in 1869 against Packer, and a warrant for a jury having been ordered to issue by agreement of the parties, the cause was submitted under a rule of court to three referees, who were to fix the point to which Packer was to flow, and who were to exercise all the powers which a sheriff's jury might have in the premises.   This agreement was made October 31, 1871, before either of the conveyances made by Packer to the other defendants.   The report of the referees was made at the May term, 1873, of the Superior Court, fixing the point to which the water might be raised by the dam, and awarding the sums for past damages, annual compensation and gross compensation for the flowage as stated in plaintiffs bill.   This report of the referees was accepted by the court, and judgment rendered thereon.   On June 13, 1873, the plaintiffs elected to take the sums awarded in gross, caused their election

to be entered upon record, and on September 29, 1873, notified the defendants of their election, demanded payment of the sums awarded as past damages and in gross compensation, no part of which has ever been paid, and have since requested the defendants to remove said dam and cease to flow their premises.

The same effect is to be given to the award of the referees as if it had been the verdict of the sheriff's jury; it embraced all the subjects which could properly have been matters of controversy before such a jury, and having been accepted and recorded by the court under whose rule it had been rendered, it formed the proper basis of a judgment, and bound all parties to the transaction. *Hunt* v. *Whitney,* 4 Met. 603. *Winkley* v. *Salisbury Manuf. Co.* 14 Gray, 443. *Leonard* v. *Wading River Reservoir Co.* 113 Mass. 235.

The proceeding under Gen. Sts. *c.* 149, sometimes termed the mill act, is one which affects the estates both of the landowner and of the mill-owner, and subsequent purchasers must take notice of a suit pending between them, and are liable to be affected by its results. *Lis pendens* is notice to all the world. At the time when the complaint for damages was made by the plaintiffs in the Superior Court, and until some time after the reference was agreed upon between Packer and the plaintiffs, Packer was the sole owner of and the only party interested in the mill and dam. While the litigation was going on, and the plaintiffs were prosecuting their claim, Packer could not, by a transfer of his title, deprive them of the benefit of the proceeding which they had initiated, or of the agreement which he had made in relation thereto, or interfere with the judgment which they might recover. They had a right to conduct their suit to a conclusion, and compel the estate by which their own had been subjected to the servitude of flowage to pay the damages which the dam had occasioned, and the annual or gross compensation for the continuance of the flowage, or else to have their estate released from the servitude. The defendants, other than Packer, cannot object any more than he, so far as it affects the estate, to a judgment rendered upon an award by virtue of an agreement for a submission by rule of court, which was entered into before either

of their titles accrued, if it was conducted fairly with a view solely to ascertain what the rights of the plaintiffs were, and embraced all the subjects and no more which were proper to be investigated and passed upon by a sheriff's jury in proceedings under the mill act. What would have been the effect of an agreement for reference between Packer and the plaintiffs, if made after the title of the other defendants had been acquired, upon the rights of such defendants, it is of course unnecessary to discuss.

If the judgment upon the award is binding upon all the defendants, those who now aid in maintaining the dam and in continuing to flow the land of the plaintiffs, asserting the right to do so, are in the situation of parties maintaining a nuisance. The benefit of the statute is only obtained by a compliance with its conditions, and without this the flowage of the plaintiffs' premises is a wrongful act. By Gen. Sts. *c.* 149, § 22, it is the duty of the owner or occupant of the mill or dam, within the three months after the landowner has elected to take the gross compensation, to pay or secure the same to his satisfaction, and if he fails to do this, he loses all benefit of the provisions of the statute. The defendants in the present case have failed to do this, and the dam which they maintain is a nuisance against which there is a remedy both at law and in equity. *Stowell* v. *Flagg*, 11 Mass. 364. But in the present case, as the dam which flows the plaintiffs' land has been for a long time maintained without payment either of damages for past flowage, or compensation for the continuance thereof, the most appropriate remedy is in equity by injunction. *Ballou* v. *Hopkinton*, 4 Gray, 324.

The Barnstable Savings Bank, not having entered under its mortgage, or flowed or aided in flowing the plaintiffs' land, is yet properly joined as defendant; having received and still holding a title by mortgage from Packer, made subsequent to the date of the plaintiffs' original complaint and the agreement for reference thereof, and making no disclaimer, it should be included in the

*Decree for perpetual injunction.*

*T. L. Nelson*, for the plaintiffs.

*L. Mason*, for the Barwick Wrench Co.

*J. M. Day*, for the Barnstable Savings Bank.