† WOOSTER *&* *al.* *versus* GREAT FALLS MANUFACTURING CO.

By c. 126, R. S., it is provided that any man may erect and maintain a water-mill and a dam to raise water for working it, upon and across any stream that is not navigable, upon the conditions therein named, and when such dam *is* lawfully erected, the person sustaining damages in his lands by being overflowed by such dam, may obtain compensation by *complaint*, and that no action shall be sustained at common law for the recovery of damages for such overflowing of lands, except in the manner provided to enforce the payment of damages, after they have been ascertained by complaint.

To entitle the owners of a dam and mill to the benefits of this statute, the *mill* as well as the dam must be situated within the limits of this State.

And where the owner of land *is* damaged by its overflow, by means of a dam erected to operate a mill situated in another State, across a river, the boundary of the two States, he may maintain an action for his indemnity at common law.

ON EXCEPTIONS from *Nisi Prius*, SHEPLEY, C. J., presiding. CASE to recover damages for flowing land.

Salmon Falls river is the boundary line between Maine and New Hampshire. The defendants are a corporation under an Act of New Hampshire, and are also recognized as such by an Act of Maine. Across this river, in August, 1846, they commenced to build a dam upon their own land, and finished it in the autumn of 1848. They built a grist-mill in 1847, in Somersworth, N. H., which was operated by means of this dam, but none whatever in this State.

The plaintiffs, in November, 1846, built a dam across Hilliard's brook in Berwick, in this State, and erected a small building, and used the water for machinery to turn wood. This brook discharged itself into Salmon Falls river. No dams had previously been erected on the sites of either party.

By means of defendants' dam, the flow of the river was so obstructed as to cover the plaintiffs' dam several feet, and to destroy his building and appendages.

The defence was that they were entitled to the benefit of c. 126, R. S., and that this action could not be maintained.

But the jury were instructed that the defendants were not entitled to the benefit of that statute, and that this action might be maintained upon proof of such flowing upon plaintiffs' land, occasioned by defendants' dam.

To these instructions defendants excepted, the verdict being returned for plaintiffs.

*Leland,* in the opening argument, to sustain the positions taken at the trial for the defence, cited the various Acts in relation to mills, passed in Massachusetts from 1709 down to the time of the separation, and our statutes upon that subject, from which he argued, that the common law remedy for flowing lands is taken away, and the remedy is by complaint alone under the statute c. 126, R. S. *Stowell* v. *Flagg,* 11 Mass. 364.

He also argued the rights of riparian proprietors and mill owners.

*Kimball, contra,* argued, that defendants were not the owners of a mill within the purview of c. 126, and were liable only at common law. *Fitch* v. *Stevens,* 3 Met. 426. That their mill being beyond the jurisdiction of this State, the lien contemplated by the statute was ineffectual, and the plaintiffs are compelled to resort to the common law. That the judgment recovered upon a complaint is a charge upon the dam, land, mill and appurtenances, to which it attaches, even against the assignee of the estate. *Pierce* v. *Knapp,* 34 Maine, 402; *Knapp* v. *Clark,* 30 Maine, 244. But the defendants have built no such mill within reach of the process of our Courts, and they cannot extend their power into a foreign territory. *Farnham* v. *Blackstone Canal Co.,* 1 Sumner, 62; *Slack* v. *Walcott,* 3 Mason, 508. Without this form of action the plaintiffs are remediless. Bill of Rights, art. 1, § 1.

*Clifford,* in reply, argued, that the fact of the dam extending across the stream into New Hampshire, did not make it less a dam upon a stream of this State, as one-half of it was actually in this State, and that consequently the remedy of the party was fixed by our laws. But it was not necessary that the dam should be immediately connected with the mill in order that it should be under the protection of the statute, and it has been held to apply to reservoir dams remote from the mills, and not even on the same stream. *Nelson*

v. *Butterfield*, 21 Maine, 220; *Walcot Man. Co.* v. *Upham*, 5 Pick. 292; *Whitney* v. *Gilman*, 33 Maine, 273; *Shaw* v. *Wells*, 5 Cush. 537.

The provisions in the Act relied on furnish ample means of compensation. The lien extends not only to the mill and mill-dam with its appurtenances, but to the land *under and adjoining the same and used therewith.*

When the defendants come here to defend their rights, they place their rights, so far as the remedy and the proceedings to enforce it are concerned, under the laws of Maine; and the remedy and proceedings to enforce it are governed by the laws of this State. Story on Conflict of Laws, § § 556, 576; *Furgerson* v. *Fyffe*, 8 Clark & Fennelly, 121; *De la Vega* v. *Kanna*, 1 Barn. & Adol. 284. The very purpose of the mill Act was to encourage the improvement of water power and to relieve it from the vexatious litigation to which it was formerly subjected.

APPLETON, J. — It appears that the defendants built a dam across the Salmon Falls river, on their own land, and erected a grist-mill connected therewith, and receiving its power from the water flowed thereby. The river, at the place where the dam was built, is the boundary line between this State and New Hampshire. The mill is in Somersworth, in the latter State. The land of the plaintiff in Berwick, in this State, having been flowed and his real estate injured by the defendants' dam, he brought an action on the case against the defendants to recover damages for the injuries thereby sustained.

The law seems to be well settled, that for all injuries to real estate, the remedy must be sought for in the jurisdiction where the wrong was committed. It was held in England, that trespass could not there be maintained for breaking and entering a house in Canada. *Doulson* v. *Mathews*, 4 D. & E. 503. The law was so held by Mr. C. J. MARSHALL, in the famous controversy relating to the batture at New Orleans. *Livingston* v. *Jefferson*, 1 Brock. 203. It was decided

by the Supreme Court of New York, that an action will not lie for an injury done by the diversion of a water-course, when the premises injured are situated in another State. "It appears to be conclusively settled," remarks NELSON, C. J., in *Watts' Adm'r* v. *Kinney*, 23 Wend. 484, "that an action on the case for diverting a water-course, so far savors of the realty as to be classed with local actions, and must be tried in the county where the injury happened. It stands on a footing in this respect with real and mixed actions, such as *trespass quare clausum fregit*, ejectment, waste, &c., where, if the lands lie in a foreign country, they cannot be tried here." The judgment of the Court in this case, was subsequently affirmed by the Court of Errors. *Watts' Adm'r* v. *Kinney*, 6 Hill, 82. It was decided in New Hampshire, that an action on the case to recover damages for flowing the plaintiff's land is local, and must be brought in the county where the land lies. *Worster* v. *Winnepiseogee Lake Co.*, 5 Foster, 525. It is apparent, therefore, that the plaintiff can maintain no action in New Hampshire for any injury he may have sustained, and that unless he can seek and obtain redress in this State, he is without remedy.

An action on the case has been regarded as the appropriate remedy at common law for any injury arising from an unlawful diversion or misuser of a water-course. This seems to be the form of action in use in New Hampshire, for any injury occasioned by flowage. *Woodman* v. *Tuffts*, 9 N. H. 88; *Worster* v. *Winnepiseogee Lake Co.*, 5 Foster, 525. But in Massachusetts, as well as in this State, this mode of obtaining redress has been superseded by Acts in these States regulating mills and mill-dams. *Stowell* v. *Flagg*, 11 Mass. 364.

It is well settled law that whatever relates to the remedy to be enforced, must be determined by the *lex fori*, the law of the country to the tribunals of which appeal is made. The learned counsel for the defendant, relying upon this principle of law, insists that this case is within the provisions and entitled to the benefits of R. S., c. 126, § 28, which pro-

vides that "no action shall be sustained at common law for the recovery of damages occasioned by the overflowing of lands as beforementioned, except in the special cases provided in this chapter, to enforce the payment of damages after they have been ascertained by process of complaint, as aforesaid." As there has been no previous ascertainment of damages by complaint, if the statute is to be held to apply to a case circumstanced like the present, this suit is distinctly within the statutory prohibition. The question for determination, therefore is, whether, when the mill to be benefited by the dam is in another State, the party whose land is flowed by its dam, can maintain an action on the case for such flowage, or is restricted to the statutory remedy by complaint.

All legislation is necessarily territorial. The statutes of a State are binding only within its jurisdiction. The Legislature cannot, if they would, authorize acts to be done in a foreign territory. "Every Legislature," remarks Mr. Justice STORY, in *Farnham* v. *Blackstone Canal Corp.* 1 Sum. 62, "however broad may be its enactments, is supposed to confine them to cases or persons within the reach of its sovereignty." They cannot affect or control property elsewhere, and it is not to be presumed they intended to exceed their jurisdiction.

From a perusal of R. S., c. 126, concerning mills and mill-dams, it is abundantly apparent that the design of the Legislature was only to affect lands and mills within the limits of the State. The right to erect mills,— the provisions as to the height to which the water may be raised, and the length of time during which it may be kept up each year — the appointment of commissioners, and the proceedings under the commission — the right to require security for yearly damages — the lien given upon the dam and mills — the mode of enforcing that lien, and the effect of a sale under the process provided by statute — the right of redemption — the right of either party if dissatisfied with the annual compensation to file a new complaint — each and every

provision of the statute, from the commencement of proceedings under it, to their final conclusion, contemplate action within our territorial jurisdiction.   The dam which causes the flowing — the mill for the benefit of which such flowing is permitted, and the land overflowed, or the property otherwise damnified by these erections, are assumed to be within the boundaries of the State, and within legislative jurisdiction.

It is provided by § 1, that " any man may erect and maintain a water-mill, and a dam to raise water for working it, upon and across any stream that is not navigable, *upon the terms and conditions, and subject to the regulations* hereinafter expressed." The license to erect is upon certain terms and conditions, and subject to certain regulations.   If the terms and conditions are not complied with, and the regulations, *subject to which* the right is granted, cannot be enforced, the right to " erect and maintain a water-mill, and a dam to raise water for working it," is not given.   To hold otherwise would be to decide that the right is not upon terms and conditions, and subject to regulations, but that it is unqualified and without limitation.   The statute itself is a liberal exercise of power on the part of the Legislature over the property of one citizen for the benefit of another.   The party, therefore, seeking protection under this Act must show his erection to have been upon the terms and conditions, and to be subject to the regulations which the statute has prescribed for the benefit and protection of the land owner, else he does not bring himself within its plain and obvious meaning.

The relief of the mill owner from the multiplicity of suits to which, by the common law, he would have been exposed, was an object, the attainment of which the Legislature had in view in the passage of the Act under consideration.   But the mill owners, to be relieved, must be those who were subject to such suits.   The statute neither gives nor purports to give to the inhabitants of New Brunswick or New Hampshire any right within the limits of those governments to

build mills and erect dams for their use, by which the lands of citizens of this State may be flowed. The right is given to those only against whom the terms and conditions of the statute can be enforced, and when the mills and mill-dams are subject to the regulations prescribed.

The prohibition of section 28, is against the maintenance of any action at common law "for the recovery of damages, occasioned by the overflowing of lands as before mentioned." But the cases before mentioned are those to which the previous provisions of the statute apply. As to all such, the land owner receives the protection intended by the Legislature. But when, from the nature of the case, he cannot derive any benefit from the various provisions of the statute for his security, the section cannot apply. These proceedings are against the property, and protect the land owner by giving him a lien for his damages upon the same. When the mill upon which the security is given is without the State, all these statute proceedings are unavailing. As the land owner cannot obtain any of the benefits given him in lieu of his common law rights, he must be regarded as remitted to those rights.

The construction here given is in entire conformity with the authorities bearing upon the subject. In *Fisk* v. *Framingham Manufacturing Company*, 12 Pick. 68, Mr. Chief Justice SHAW says, "It is well settled, that in all cases where the party is entitled to his damages upon complaint, under the statute, his common law remedy is taken away." It is obvious, that when the party cannot proceed by complaint, as where the mill is without the State, that unless the party aggrieved can proceed at common law, he is without remedy. So when the mill has ceased to be used or has been removed and not replaced, the dam ceases to be a mill-dam, under the protection of the mill Acts, and the remedy for the owner of the land which is flowed by it, is by an action at common law. *Baird* v. *Hunter*, 12 Pick. 556. To entitle a party to the protection of this statute, it is not enough that he erect a dam across a stream run-

ning through his own land. There must be a mill in con-
nection with his dam, or an intention forthwith to erect
one, else he is not a mill owner within the purview of the
statute, and is liable at common law in an action on the case
for damages occasioned by means of his dam flowing the
dams of others. *Fitch* v. *Stevens*, 4 Met. 426. There is
no mill in this State connected with the defendants' dam, and
the defendants are not within the spirit or meaning of the
statute which they invoke in their aid; for they have not
afforded the plaintiff, by any erection of theirs, the security
which the statute contemplates. *United States* v. *Ames*,
1 W. & M. 76.

It is not contended that the Legislature of New Hamp-
shire have authorized the raising of the dam within that
State, whereby the waters of the river may be flowed back
to the injury of land situated in this State. The important
and delicate question which might be presented in case the
defence rested upon the local law, is not presented because
the dam is partly in this State, and the defendants justify
under no special legislation of New Hampshire.

Upon a careful examination of the statute, the conclu-
sion is, that mills without the jurisdiction of the State, not
being subject to the terms, conditions and regulations of
the statutes, are not entitled to its benefits; and that the
common law remedy remains unaffected by its provisions.
The instructions given were in conformity with the unques-
tioned intentions of the Legislature, and the just construc-
tion of the statute, and the exceptions thereto must be over-
ruled.                          *Exceptions overruled.*
                          *Judgment on the verdict.*