SALISBURY MILLS *v.* FORSAITH.

*Flowage act of 1868—Foreign corporation.*

A foreign corporation, having erected a dam upon their own land in another state, whereby the water of a stream is set back upon the land of a riparian owner above in this state, cannot by petition have the damage of such land-owner assessed, and their rights of flowage ascertained and fixed, under the New Hampshire act of 1868, for the encouragement of manufactures.

FROM ROCKINGHAM CIRCUIT COURT.

PETITION, under the act of 1868, ch. 20, to encourage manufactures, praying to have assessed the damages to the defendant's land in this state, caused by the plaintiffs' dam in Massachusetts. The questions arise upon a demurrer to the petition. The material facts appear in the opinions. The questions arising upon the demurrer were transferred to this court by RAND, J., C. C.

*Goodall,* for the plaintiffs.

The intention of the law was for mills, reservoirs, and dams to be built, which on the whole were for the public benefit of the people of this state; and any flowage in this state occasioned by any dam which a man built, when he had a right to build it, is covered by the law, whether the dam be in the state or not. If the flowage is here, and the reservoir and flowage, as a whole, are of benefit to this state, that is all that is required. The law covers the right to flow. The court has full power to settle all questions of flowage within this jurisdiction. It is a question of flowage and drainage of any land flowed or drained by a dam, wherever situated, provided it be built where the corporation had a right to build it.

Jurisdiction over the place of the actual erection of the dam is not necessary. Jurisdiction is only material over the actual place of the flowage, because the dam was to be built where the party could do what he pleased, and could put up such erection as he chose; but if he, by using his own property, as he had a right, caused damage by flowing land above by back water, he should be liable. The petition alleges it to be of public benefit; and although in the state of Massachusetts just over the line, such a market may be made for the produce of the people of New Hampshire as to make it a public benefit to the people of this state. And the putting in of the words, the people of this state, shows the legislature intended that although such reservoirs might be of public benefit to people of other states by being held and used as reservoirs for their benefit, yet such benefit could not be taken

into account on settling this question as to reservoirs erected here. That this state would not permit such reservoirs for the use of mills out of the state alone, nor unless they were so used in the state as to be of public benefit in New Hampshire ; and if they would put up such mills and erections as would make them, on the whole, beneficial to the people of New Hampshire, they might use them for mills below.

Why should not the flowage law govern this case ?   We are strictly within the words of the statute.   The court have to construe the intent to have been different from the words, to avoid our conclusion.   They have to say that the place where the dam was built must not only be " on his or its own land," but also to go further, and say the legislature intended and meant to say that it must not only be his land, but it must be his land in New Hampshire ; also, that the words " mills below upon any stream not navigable " do not mean below anywhere upon the stream, as the statute says, but mean something different—" anywhere below in New Hampshire ; " that the words " any person or any corporation authorized by its charter so to do " do not mean any person or corporation out of the state of New Hampshire, for, if they did, they could not erect upon their own land out of the state where their lands were.

Now it is clear the legislature can say, that if foreign corporations will come into this state and put up reservoirs, mills, and dams, on a stream which rises in this state and flows into any other state, whereby flowage or drainage is caused to lands in this state, and if such foreign corporations on the stream below in Massachusetts, on their own land, erect a dam and mills under the laws of Massachusetts and the provisions of their statutes, which dam is a part of the same system of flowage and drainage, and if, by reason of such dam in Massachusetts, land is flowed in New Hampshire, all the damages occasioned in New Hampshire by such flowage therein, whether occasioned by dams in New Hampshire or Massachusetts, may all be recovered in one suit, if, on the whole, the commissioners, court, or jury find the erections to be of public benefit to the people of New Hampshire.

*Marston*, for the defendant.

The petition alleges that the plaintiffs, a Massachusetts corporation, have erected a dam across the Powow river and on their own land in Massachusetts, where their woollen mills are situated, by reason of which the lands of the defendant, a citizen of New Hampshire, are overflowed and injured, for which an action has been commenced ; and concludes with a prayer for the assessment of all damages, past and prospective, under the act of July, 1868.

To this petition the defendant demurs, and makes the following points in support of his demurrer :

1. The act of July, 1868, is entitled an act for the encouragement of manufactures, and the object of the act is manifestly for the encouragement of manufactures in New Hampshire, and not elsewhere.   The au-

thority granted, in the first section, to any person to erect a dam on his own land, and thus create a reservoir for the use of mills below, is of course to be exercised where the legislature had jurisdiction, and not in a foreign territory where it had none. All legislation is necessarily territorial. STORY, J., said, in *Farnham* v. *Blackstone Canal Co.*, 1 Sum. 62,—" Every legislature is supposed to confine its enactments to cases or persons within the reach of its sovereignty." The right granted to erect a water-mill, and a dam to raise water for working it, the appointment of a committee to assess damages, the examination of the dam and mills by the committee to determine what damage they may occasion and whether the flowing may be of public use to the people of this state, necessarily require the dams and mills permitted to be within our legislative jurisdiction. The license to erect mills and dams, and create a reservoir, is given upon certain terms and conditions, and subject to the regulations expressed in the act. If they are not complied with, or cannot be enforced, no right is given. But neither the legislature nor the courts of New Hampshire have jurisdiction over the parties plaintiffs, nor over their mills and dams in Massachusetts. The case of *Wooster* v. *Great Falls M. Co.*, 39 Me. 246, was founded on a similar flowage law in Maine. The dam was partly in New Hampshire, and flowed lands in Maine ; and it was held that the flowage act was not applicable, because the dam was partly in New Hampshire. *United States* v. *Ames*, 1 W. & M. 76, was case for flowing arsenal lands in Springfield, by a dam outside the lands of the United States ; and it was held that the flowage acts of Massachusetts did not apply to lands of the United States ;—see, also, *Com.* v. *Clary*, 8 Mass. 72 ; *People* v. *Godfrey*, 17 John. 225.

2. By the second section of the act, either party may apply to the court, in the county where the grievance arises, for an assessment of damages, &c. Suppose the defendant, Forsaith, should petition for an assessment of damages under this act: How is the court to obtain jurisdiction over this Massachusetts corporation ? How enforce any order or judgment ? How compel a party in Massachusetts to pay at one time for all the damage that may possibly be occasioned in the future by acts on their own land in their own state ? The act of 1868 is in derogation of the common law and the natural rights of the citizen, and goes to the very verge of constitutional limit, if not beyond it, however restricted may be the construction given to it. It should not and cannot be extended by implication. There must be a pressing public necessity to justify the invasion of private rights by superior power. We submit that there is no such pressing public necessity for enlarging the capacity of a woollen mill in Massachusetts, as will justify the taking of private property in New Hampshire to accomplish that object. *Jordan* v. *Woodward*, 40 Maine 317 ; *Williams* v. *School District*, 33 Vt. 532 ; *Com.* v. *Clary*, 8 Mass. 72.

LADD, J. The petition states that the plaintiffs are a corporation duly established by law, having their principal place of business at

Salisbury and Amesbury, in the county of Essex and state of Massachusetts : from which I suppose it is to be understood that they are a Massachusetts corporation. The petition further shows, that the plaintiffs' mills for the manufacture of cotton and woollen goods, as well as the only dam they have situated below the defendant's land, are in Massachusetts ; that they have one dam in Massachusetts and three in New Hampshire above the defendant's land, and that upon one of the latter dams, that at the Trickling Falls, East Kingston, they have a saw-mill and a grist-mill,—those two mills, situated above the defendant's land on the same stream, being the only works, so far as appears from the petition, carried on by them in this state.

It is to have assessed the damage for flowing and draining the defendant's land, situated in New Hampshire on a bend of the river between their two dams in Massachusetts, that this petition is brought.

The petition is founded upon ch. 20 of the Laws of 1868, and the plaintiffs say they are entitled to the benefits of that act the same as though they were a New Hampshire corporation, and their dam which causes the damage, and their mills for which that dam was built, were situated within the limits of this state. I think this position cannot be sustained. The first section of the act is as follows : " Any person, or any corporation authorized by its charter so to do, may erect and maintain on his or its own land, or upon land of another with his consent, a water-mill, and a dam to raise the water for working it, or for creating a reservoir of water, and for equalizing the flow of the same for its use and of mills below, upon and across any stream not navigable, upon the terms and conditions and subject to the regulations hereinafter expressed."

It is certain that this act can have no extra-territorial application or effect. The use and management of Massachusetts real estate cannot be subjected to the control of New Hampshire laws. The legislature of this state can no more confer upon a Massachusetts corporation the right to build a dam and water-mill upon their own land, or the land of another with his consent, in that state, than they can forbid such act there ; and, so far as I can see, they may as well do either, or both, as to impose " terms," " conditions," and " regulations " upon the building of such dam and mill, as provided by the act. Suppose, as is suggested by the learned counsel for the defendant, that Mr. Forsaith, instead of the plaintiffs, had been the moving party, and had petitioned to have his damages assessed, and the extent and character of the defendant's rights of flowage ascertained and fixed under the act : how could that be done without giving to the act itself, *propriore vigore*, as well as to a decree or judgment of the court, effect which neither can have beyond the boundaries of the state ? By section 3 it is made the indispensable duty of the committee to ascertain and consider the depth and extent to which the land may or can be flowed by the dam ; and in order to do this they are required to " view the premises," which must mean the dam, as well as the land injuriously affected by it. Is it to be supposed that the legislature intended to order

such an invasion of the territory of a neighboring state for the obvious purpose of carrying our municipal law where it can have no effect? If a citizen of Massachusetts, by building a dam on his own land in that state, causes the water of a stream to set back upon the land of a riparian owner above in New Hampshire, he is undoubtedly guilty of a wrongful act within this state, for the injurious consequences of which he may be held liable here; but the injured citizen must, nevertheless, content himself with such remedies as are open to him, without attempting to carry an act of the legislature beyond the line of the state. The case of *Wooster* v. *Great Falls Manufacturing Co.*, 39 Me. 246, referred to in the defendant's brief, appears to be quite in point. That was an action on the case to recover damages for flowing land. The dam was across the Salmon Falls river, which is the boundary line between Maine and New Hampshire. The defendants were a New Hampshire corporation, and their mills, for the use of which the dam was built, were in New Hampshire. The plaintiff's land was situated in Berwick, Maine. The defendants claimed the benefit of the Maine flowage act, and contended that this common law action could not be maintained. The Maine statute provided that any man may erect and maintain a water-mill, and a dam to raise water for working it, upon and across any stream that is not navigable, upon the conditions therein named; and when such dam is lawfully erected, the person sustaining damages in his lands by being overflowed by such dam may obtain compensation by *complaint;* and that no action shall be sustained at common law for the recovery of damages for such overflowing of lands, except in the manner provided to enforce the payment of damages, after they have been ascertained by complaint. It also, among a variety of other provisions bearing more or less analogy to those found in our own act, gave a lien upon the dam and mills as security for the damage caused thereby. The court, in an able opinion by APPLETON, J., held, that to entitle the owners of a dam to the benefits of the statute, the mill as well as the dam must be situated within the limits of the state. The only attempt to distinguish that case from the present has been put upon the ground that the Maine statute gives a lien on the dam and mill in favor of the land-owner. It is true, that fact is alluded to in the opinion of the court in connection with a variety of other circumstances which apply with equal force in the interpretation of our own statute. But the decision is fairly put upon the broad ground that " the dam which causes the flowing, the mill for the benefit of which such flowing is permitted, and the land overflowed or the property otherwise damnified by these erections, are assumed to be within the boundaries of the state, and within legislative jurisdiction." But in view of the construction put upon our act in *Ash* v. *Cummings*, 50 N. H. 591, the lien given by the Maine act seems to possess no significance that can distinguish the cases at all; for in that case it was held that until there has been an assessment and tender of the damages the common law action is not taken away; and also, in effect, that unless ample security for the payment of the damages is furnished, an in-

junction will be granted to forbid any flowing of the plaintiff's land, even for the purpose of experiment, under the act. The practical difficulties in the way of enforcing the act, as thus interpreted, against a foreign corporation who have erected their dam and mill in another state, are evidently no less formidable than in case of the Maine statute, which provides for obtaining compensation upon complaint, re-enforced by a lien on the mill and dam.

It seems to me impossible to doubt that the intention of the legislature was, to confine the operation of the act within the limits of the state, thus giving it the same application as all other statutes have, and no other; that when they speak of a dam and water-mill erected on land of the owner, or upon land of another with his consent, they mean mills and dams and land within this state, where their enactments have force, and not elsewhere; and when they speak of " any corporation authorized by its charter so to do," they mean a New Hampshire corporation, deriving its authority from a charter granted by the sovereign power of this state to do the acts referred to within this state, and not a foreign corporation authorized by the legislature of another state to do the acts named within the limits of such other state.

There is another consideration, which, in my judgment, must be fatal to this petition, so far, at least, as regards the damage to the defendant's land caused by the dam or dams in Massachusetts, and so far, also, as regards dams in New Hampshire built for the benefit of mills in Massachusetts. The act is entitled " An act for the encouragement of manufactures," and the design of the legislature is apparent throughout to encourage manufactures in New Hampshire and not in the adjoining states. In order that land may be taken for this purpose against the owner's consent, the committee, and ultimately the court, must be satisfied that such taking is or may be of public use or benefit to the people of this state. I agree with counsel for the defendant that the act goes to the verge of the constitutional power of the legislature, and I may say that, but for the authorities by which the court thought they should be governed in the late case of *Amoskeag Co.* v. *Head*, I should find great difficulty in sustaining it. But, giving to the act the widest scope and effect which have been thought admissible under the constitution, I think it must be said that the public use and benefit intended were those which would arise from the erection of mills and the employment of our water-power within our own limits, and not outside. It certainly may be, in one sense, of public use and benefit to the people of this state to have so good and so rich a neighbor on the south as our sister commonwealth of Massachusetts. Doubtless it may be of benefit to our people that every stream which flows from this state into that should be skirted with manufacturing establishments from the point where it leaves our borders to where it empties into the ocean; that thriving and opulent manufacturing towns should spring up along the line, although upon the other side; and that the industry, enterprise, and thrift for which the people of that state are so justly renowned should be stimulated and encouraged by the exercise of a

liberal comity in the making and administration of our laws. It may be of public benefit to the people of this state that the city of Chicago was rebuilt after the great fire which laid so large a part of it in ashes in the autumn of 1871. It perhaps would not be difficult to show that no inconsiderable benefit has resulted to our people from the rebuilding of the burnt district in Boston. I do not see that these benefits differ at all, unless it may be in degree, from those which would result from the building of a dam and mills for the manufacture of cotton and woollen goods just over the line in Massachusetts, and I do not think they are such as could have been intended by the act.

It may be urged that this is a question of fact to be found by the committee. But the committee, in the discharge of their duty, must be governed by the law, and the construction of the statute is matter of law for the court. Besides, according to the provisions of section 3 of the act, it is for the court, in the end, if either party requires it, to settle the fact as well as the law, so far as regards this question, and say whether the proposed use will be of public use or benefit; and when the facts admitted by the demurrer show that the dam and mills where the water is to be used are without the state, I see no reason why the court should not say whether the benefit alleged comes within the meaning of the act, as well upon the demurrer as after the petition has been sent to a committee, and the same facts appear in a report. In either view, I think it is the duty of the court to say whether the benefit proposed comes within the purview of the act; and I am clearly of opinion that it does not.

It is perfectly obvious that any public use or benefit arising from the plaintiffs' mills at the Trickling Falls cannot furnish ground for an application of the act in respect of flowage caused by the dam in Massachusetts. From the petition, and the course of the argument, I do not understand that it is damage caused by the dams in New Hampshire that the plaintiffs want assessed, although it does not very clearly appear, perhaps, whether they have exceeded their legal rights in the use of those dams or not. If they have not, they have no need to invoke the benefit of the act; if they have, then I am of opinion they cannot avail themselves of its provisions for the reason already given, that they are a foreign corporation, with no authority from the supreme law-making power of this state to erect dams in such way as to flow or drain the land of riparian owners above or below, against the consent of such owners.

My conclusion is, that the demurrer should be sustained.

CUSHING, C. J. This is a question of construction. It appears to me that the statute cannot be so construed as to give it an extra-territorial effect, and make it apply to dams built out of the limits of the state.

SMITH, J. The plaintiffs are a corporation existing under the laws of Massachusetts, and having their principal place of business in that

state. They have erected upon their own land in that state a mill and dam, by means of which the defendant's land in this state has been flowed. They bring this petition for the assessment of all damages, past and prospective, occasioned thereby.

The act of July, 1868, ch. 20, under which this petition is brought, is entitled " An act for the encouragement of manufactures." It was manifestly intended for the encouragement of manufactures in this state. By the language of the third section, the committee can make no assessment of damages, unless they shall be of the opinion that the flowing " is or may be of public use or benefit to the people of this state."

It is one of the plainest elementary rules, that no legislature can extend its laws to territory beyond the borders of its own state. How, then, can the courts of this state have any jurisdiction over dams and mills in another state ? How shall a court in New Hampshire decree that a corporation in Massachusetts may not maintain a dam in that state above a certain height ? and, if such decree were made, how would the court be able to enforce it ? By section 3 it is made the duty of the committee, besides hearing the parties, to view the premises. But how are the committee to comply with that provision of the law, without committing a trespass when they enter upon premises outside the limits of the state against the will of the owner ?

By section 4 it is provided that no person or corporation shall derive any title from such proceeding until they have paid or tendered to the person aggrieved or damaged the amount of the adverse judgment that may be rendered. By this must be meant a deriving of title to rights and premises within the state ; for no legislature can extend its laws to property or persons not within the reach of its sovereignty. *Farnham* v. *Blackstone Canal Co.*, 1 Sum. 62.

In actions arising out of the reality, it is a good plea to the jurisdiction of a court that the land on which the wrong was committed, or out of which the action arose, lies in a foreign country or state. In an action brought for the recovery of land so situated, a plea to the jurisdiction is not even necessary. The judgment in such case being *in rem* must be utterly nugatory, and the exception may be taken at any stage of the proceedings. Gould's Pl., ch. 5, secs. 21, 22.

In any view that may be taken of this case, I do not see how this petition can be maintained.

*Demurrer sustained.*